Molly B. GIRVIN, Plaintiff-Respondent,

v.

Charles M. GIRVIN, Defendant-Appellant.

No. 33994.

St. Louis Court of Appeals,
Missouri.

July 27, 1971.

Motion for Rehearing or to Transfer to
Supreme Court Denied Oct. 6, 1971.

John L. Oliver, Jr., Oliver, Oliver &
Jones, Cape Girardeau, for defendant-appellant.

Gerald H. Johnson, Downs & Johnson,
Cape Girardeau, for plaintiff-respondent.

WEIER, Commissioner.

From an order allowing plaintiff mother to remove the child of the parties from Missouri to California and modifying the decree of divorce to allow defendant father to have the child for three months during the summer of each year, defendant appeals. We affirm.

Plaintiff, Molly B. Girvin, and defendant, Charles M. Girvin, were divorced October 15, 1969. Under the terms of the decree the custody of their two-year-old son, Charles M. Girvin, Jr., was given to plaintiff, with the right in defendant to have the boy during the months of June and July and on alternate holidays. On August 1, 1970, plaintiff married Gordon Craig Humphrey, who lived in Orinda, a city near Berkeley, in the state of California. Humphrey had been an engineering student at the Berkeley campus of the University of California. He had completed all of his courses, except for two quarters. He had missed school the fall of 1969 because of injuries suffered in an automobile accident. When he returned to school in January, 1970, the classes which were offered and which he could attend did not fit his requirements. He then returned to Missouri, where he had been employed to continue with his work. He had saved enough to complete his courses without working. By returning to the university in September, 1970, he could obtain his degree in civil engineering in March, 1971.

Plaintiff, desiring to live with her husband and retain custody of her son,

Charles, filed a motion to modify the divorce decree. In this she alleged her remarriage to a resident of California; that she desired to live with her husband in California; and that she wanted permission to take the child, who was now three years old, with her. In addition to allowing removal of the boy, she sought a reduction of the partial custody in defendant from two summer months to one month, elimination of share custody on alternate holidays, but preserving the right of visitation in defendant at all times. Thereafter, defendant also filed a motion to modify, alleging neglect, failure to maintain a well-ordered home, failure to provide proper clothing and medical care, and frequent absence, often leaving the child ill. Defendant sought the right of complete custody or, in the alternative, custody during June, July and August of each year, every other weekend during the remainder of the year, and rights of visitation. Defendant further requested that plaintiff's motion to remove the child be denied.

A hearing was held by the circuit court on September 4, 1970. Plaintiff's evidence described the remarriage and the reason for the move of plaintiff and her husband to California, as previously detailed. As to the area where they were to live and where plaintiff proposed to take the child, it was described as a residential suburb twelve miles east of Berkeley. Mr. Humphrey's father owned a home there, but, as an engineer, he was currently assigned to a job in Africa, where both parents would be for eighteen months. During this time the plaintiff and her husband would live in the parents' unoccupied home. Plaintiff would not work. Later after Mr. Humphrey's graduation they proposed to live in the same area, described as desirable residential, with excellent schools.

Since the time of the divorce, plaintiff has lived with her mother in Lilbourn, Missouri. The child has lived there except when he was with his father, and except when Mrs. Humphrey was working, when, because of the grandmother's employment,

the child would stay with Mrs. Humphrey's sister. Plaintiff had held various jobs before her remarriage. She attended school the first part of 1970 but dropped out because of financial reasons. On several occasions she left home, to remain away several weeks looking for work. Each time she was unsuccessful and returned home. On one occasion she left when the child was ill, but only after conferring with the doctor and employing a woman to care for him.

Charles M. Girvin, the father, has had different types of work since the divorce. He was assistant manager of a restaurant or food shop in Cape Girardeau and Sikeston. He worked as a carpenter. At the time of hearing on the motion he was employed by his father at a salary of $100.00 per week in a farming enterprise conducted by the father on over 900 acres. He has remained unmarried, but lives with his parents and two brothers in an attractive and substantial five-bedroom house in Portageville, Missouri. The house is located on a large lot with playground facilities for the grandson. The paternal grandparents by their testimony at the hearing, evidenced a feeling of strong attachment and love toward the grandson, with a willingness to provide him a well-ordered and disciplined home. All of his material and spiritual needs would be adequately supplied.

No evidence of mistreatment of the child was adduced. He came to the Girvin home frequently and regularly. On a number of occasions he had to be taken to a doctor for medical attention. These visits were sometimes occasioned by a cold, sometimes by sand flea bites. He played around with his food rather than eating it. When he stayed with the Girvins for any extended period, he was forced to eat, and accordingly gained weight. No charge of immoral conduct was made as to either parent. No neglect of any substantial nature appeared. Depending on which version of the facts received the most emphasis, one might detect a bit of over-concern on the paternal side and a touch of under-

concern on the maternal side in the evidence. But both parents exhibited a sincere love for the child and an excellent attitude in working out their program of divided custody.

At the conclusion of the hearing, the case was taken as submitted, and on September 16, 1970, the court entered its order modifying the decree of divorce. Plaintiff's motion was sustained to allow her to remove the child to California. Defendant's motion as to change of custody was denied, but the decree was modified to allow defendant custody for three months during the summer of each year. Visitation rights in the father were preserved.

 Defendant has appealed, contending, first, that plaintiff's motion to modify failed to state a claim upon which relief could be granted. Secondly, defendant asserts the plaintiff failed to sustain her burden of proof to show there had been such a change of condition as would entitle the court to find it was in the best interests of the child to move him to California. Lastly, defendant maintains the evidence preponderated in favoring that full custody be granted to him, subject to reasonable visitation rights in plaintiff.

The first two points relied on are essentially one on review. The facts that were pleaded and proven by plaintiff's evidence might be simply stated: Plaintiff had remarried. She and her husband were moving to California. She desired to take the child, aged three years, with her, and she moved the court to allow her to do so.

As defendant has pointed out in his brief, a motion to modify a decree of divorce is in the nature of an independent proceeding and the motion must be treated as a petition in an original proceeding. As such, a claim on which relief can be granted must be stated. The motion must set forth such facts and circumstances occurring since the original decree, which, if proven, will require the court to find the child's best interests will be served by granting the motion. Such facts should be set out in sufficient detail to inform the other party of the facts relied on for modification. Engler v. Engler, Mo.App., 455 S.W.2d 36, 37 [1, 2].

Judge Bennick, in often-quoted language, clearly sets out the rule of law under which this case falls, in Baer v. Baer, Mo. App., 51 S.W.2d 873, 878 [5, 6], where he states:

"Generally speaking, it is against the policy of the law to permit the removal of a minor child to another jurisdiction, due principally to the fact that upon the entry of a decree of divorce, the child becomes the ward of the court, and that upon its removal to another state, any subsequent order made pursuant to the court's continuing jurisdiction may be difficult, if not impossible, of enforcement. However, the obstacle of nonresidence is not to be regarded as an insuperable one; and notwithstanding the fixed policy of the courts, the removal of a child will nevertheless be permitted in those instances where it is made clearly to appear to the court that the best interests of the child itself will be thereby subserved."

Concerning what facts must be pleaded and proved to constitute a change in condition that would warrant the court to allow removal, the facts of remarriage, past custody of child by the moving party, the need of the parent to move from the state, and the tender age of the child are sufficient and warrant such an order to be made. Good v. Good, Mo.App., 384 S.W.2d 98, 100 [1]. These essential facts were here averred in the plaintiff's motion and proven at the trial.

We, of course, are cognizant of the fact that it is to the best interests of children of a broken marriage to continue to associate with both parents when both are proper persons for such association. Both parties here love their son and both appear to merit his companionship and are fully capable of giving worthwhile parental guidance. But certainly the court had this

in mind when it allowed the mother to take the child with her and the father to have him during each summer for three months. With such a liberal division of custody, each of the parents will have an opportunity to impart the best of their experience, knowledge, training and spiritual values to the child and at the same time continue to build the mutual love and respect which must exist between parent and child for the child's future growth and well-being, both physical and spiritual.

The argument has been advanced by defendant that it is pure speculation to conclude the best interests of the child will be served in changing his environment to one not yet established. Although Mr. and Mrs. Humphrey had not at the time of hearing established a new home in California, they had the assurance of a place to live during the remainder of Mr. Humphrey's schooling. Their future, like that of many other young people, was not completely charted, with success predetermined. If misfortune is their lot and they cannot provide the home and care which the child must have, then the defendant may, by motion, seek another modification.

Since the child was only three years of age at the time of the hearing, the court properly placed the boy with his mother for the greater part of each year. It is usually to the best interests of a child of tender years that its custody be awarded to its mother. Oliver v. Oliver, Mo.App., 325 S.W.2d 33, 39 [10].

Finding no error in the denial of the motion to dismiss plaintiff's motion, and concurring in the judgment below, we affirm the trial court.

PER CURIAM.

The foregoing opinion by WEIER, C., is adopted as the opinion of this Court. Accordingly, the judgment is affirmed.

BRADY, P. J., and DOWD, J., concur.

WOLFE, J., not participating.