Beverly FIELDS, Respondent,

v.

Wendell FIELDS, Appellant.

No. KCD 30067.

Missouri Court of Appeals,
Western District.

June 29, 1979.

L. E. Atherton, Milan, for appellant.

R. Max Humphreys, Trenton, for respondent.

Before SHANGLER, P. J., and WASSERSTROM and CLARK, JJ.

CLARK, Judge.

Wendell Fields appeals the judgment which dissolved his marriage to Beverly Fields and raises issues regarding designation and division of marital property by the trial court.

Wendell married Beverly, twenty years his junior, in 1961. Although children had previously been born to each and three additional children were born of this union, no questions of support or custody are raised and further reference to progeny of the parties is unnecessary.

The parties made their marital home on a farm comprising approximately 640 acres which Wendell had acquired by inheritance before the marriage. To this was added 110 acres of contiguous land purchased during the marriage. Also acquired was a residence in Chillicothe bought in 1967 and rented for income. Primary support to maintain the family was derived from farming operations. This had been Wendell's occupation before the marriage. To some extent, Beverly assisted with work in the fields and operated vehicles and machinery as well as performing household duties. She also worked at a food processing plant for wages from 1968 to 1972.

Wendell's son of a former marriage died in 1969 and Wendell received benefits paid as proceeds from policies of insurance on the life of the son. The amount of insurance was not disclosed by the evidence. Wendell contended the insurance proceeds were used to purchase the 110-acre farm and a certificate of deposit in the amount of $5000.00. The record fails to disclose the title and registration of ownership of either.

Somewhat by chance, Beverly commenced breeding dogs and gradually developed a business in the breeding and sale of registered dogs which, during the years 1971 to 1976, had gross sales ranging from $8019.00 to $17,972.00 and net profits of $565.00 to $8360.00. At the date of separation, sixty dogs remained. Registration papers on the dogs were destroyed accidentally in a fire and the dogs were thereafter of doubtful value as those with whom the dogs were subsequently placed were unwilling to pay full consideration without documents of pedigree. Beverly did, from time to time before and after the separation, receive checks to apply on the sale prices for dogs delivered, but the amounts were not established by the evidence.

Separations of the parties occurred from time to time during the marriage on which occasions Beverly left the home to visit or reside elsewhere. She acknowledged marital misconduct with male friends during these interludes and also while still at home. Such was apparently a prime source of final estrangement when the parties separated for the last time December 11, 1976.

By a judgment entered October 31, 1977, the court ordered dissolution of the mar-

riage, awarded custody of the children to Wendell and granted neither maintenance nor support. Purported disposition of property was covered by an order awarding "all property mentioned in the evidence" to Wendell except certain items set apart to Beverly. The assets assigned to her were the Chillicothe house, a certificate of deposit bearing her name, a pickup truck titled in her name and clothing and personal effects.

The judgment included no finding as to values of particular assets, no designation of which assets were marital property and which were non-marital property and no indication of the extent to which assets allotted to either spouse included non-marital property set apart as the separate property of that spouse. The judgment did, however, include a finding "[that] the net worth of the parties, including marital and non-marital property is approximately Two Hundred Thousand Dollars ($200,000.00) and that approximately one-half of that total is attributable to marital property accumulated over the period of the marriage."

Wendell filed his motion for new trial which motion was overruled November 28, 1977 after hearing. No appeal was lodged from that order or from the October 31, 1977 judgment. On December 20, 1977, Beverly filed a "Motion To Correct Judgment Entry" alleging that the judgment of October 31, 1977 had inadvertently omitted an award to her of $15,000.00 cash. Such motion was taken up by the court on January 23, 1978 and upon a finding "that the Judgment Entry heretofore entered was erroneous and not showing that judgment was rendered against Respondent and in favor of Petitioner for the sum of Fifteen Thousand Dollars ($15,000.00) in addition to the other property set aside to Petitioner," the court amended the prior judgment to award Beverly $15,000.00.

The entry of January 23, 1978 was made as a complete judgment incorporating all of the findings and orders of the earlier entry and differing only in the addition of the cash award to Beverly. As this appeal is taken pursuant to a special order of this court issued under Rule 81.07(a) and within

six months of the rendition of the original judgment, it is unnecessary to decide, as to the identical provisions of both judgments, which is the subject of review on appellant's points of error common to both entries. Initial inquiry must first be made, however, to evaluate the validity of the attempted correction nunc pro tunc adding the cash allowance of which appellant complains.

An entry of judgment may be corrected to remedy a clerical error or mistake which resulted in an entry that did not actually reflect the judgment rendered. *Wiseman v. Lehmann*, 464 S.W.2d 539 (Mo. App.1971). The entry correcting a clerical error cannot be made, however, unless supported by some writing in the record which shows the judgment as actually rendered. *Van Noy v. Huston*, 448 S.W.2d 622 (Mo. App.1969). A correcting entry may not be employed to correct judicial errors, mistakes or oversights nor may it be used to enter a different judgment even though the judgment rendered was not the judgment the judge intended. *Van Noy v. Huston, supra.* In case of doubt, the court may look to the entire record, including pleadings and process, to ascertain the judgment actually rendered as contrasted with the judgment entered. *First Nat. Bk. of Collinsville v. Goldfarb*, 527 S.W.2d 427 (Mo.App.1975).

Neither respondent's motion nor the court's order before us allege or refer to any writing, notation or memorandum relied on to support the amendment adding the award of $15,000.00 to Beverly. As the burden is on the party seeking correction to establish the true nature of the judgment rendered, *City of Ferguson v. Nelson*, 438 S.W.2d 249 (Mo.1969), absence of such basis in the record to support the corrective entry precludes according recognition to the additional cash award. *Aronberg v. Aronberg*, 316 S.W.2d 675 (Mo.App.1958). For purposes of this appeal, the judgment in the case will be that rendered October 31, 1977 and restated January 23, 1978, exclusive of the cash award to Beverly.

The judgment of October 31, 1977 purported to set aside to the parties "all prop-

erty mentioned in the evidence," a phrase which would encompass both marital and non-marital assets found by the court to be of approximately equal value. The decree does not identify which assets fall in either class nor does it state to which party or to both are the non-marital assets assigned because not subject to division by the court. Addition or deletion of the subsequent cash award to Beverly is immaterial to the fundamental question raised by this aspect of the judgment.

■ Wendell challenges the result as to property division in this case on two grounds, the second of which includes six sub-points.[1] None preserves anything for appellate review as they fail to state wherein and why claim is made that the trial court erred. From consideration of the judgment entry as noted above, however, failure of the trial court to exhaust its jurisdiction appears to be the threshold issue. As this appeal would, in such event, be premature, the issue of property disposition must be considered sua sponte to determine if we have jurisdiction to review the judgment. *Oasis Car Wash, Inc. v. First North City Bank*, 558 S.W.2d 683 (Mo.App.1977).

■ Under the Dissolution of Marriage Act of 1973, the trial court is specifically charged with the duty to divide the marital property and to set apart to each spouse his property. Section 452.330, RSMo Supp. 1973. The purpose of the statute is to minimize necessity for recourse by the parties to subsequent litigation and to accomplish in the judgment dissolving the marriage a complete severance of unity of possession and title to property between the spouses. *Corder v. Corder*, 546 S.W.2d 798 (Mo.App.1977).

■■ Quite obviously, division of marital property must be preceded by a finding of what assets constitute marital property. Property acquired by gift, bequest, devise or descent is non-marital property and is not subject to division by the court. Section 452.330, RSMo Supp.1973. The court must therefore make specific findings as to

each asset or class of assets whether a particular item is marital property subject to division by the court or is non-marital property and is the property of a spouse individually. *Schulz v. Schulz*, 583 S.W.2d 735 (No. 39,408, handed down May 29, 1979 by Missouri Court of Appeals, Eastern District); *Anspach v. Anspach*, 557 S.W.2d 3 (Mo.App.1977). In the division of marital property, one relevant factor to be considered by the court is the value and extent of other property possessed by either party. *Cain v. Cain*, 536 S.W.2d 866 (Mo.App.1976); Section 452.330–1(2), RSMo Supp.1973. Allocation of non-marital property as the separate property of the spouse and the valuation of such property is therefore essential as a prelude to division of marital property in meeting the statutory requirement for a "just" division with due regard to all relevant factors. *Corder v. Corder, supra*.

The subject of contest in this case was the division of property. Neither party contested those portions of the judgment which declared the marriage to be irretrievably broken nor was any issue made as to the custody award of the children. As to the property, however, the court was confronted with conflicting evidence on the question of which assets were marital. The resolution of that controversy is determinative of authority and jurisdiction of the court to divide, and the succeeding issue of competing claims of the parties to those assets found to be marital and, hence subject to division.

Wendell relied on the facts of his acquisition of the 640-acre farm by inheritance prior to the marriage and the purchase of the 110 acres and a certificate of deposit with proceeds of insurance on the life of his son as the basis for exempting such assets from division as marital property. Beverly, however, contended that she had assumed loan obligations encumbering the farm and had contributed to the farming operation during some fifteen years of marriage, all of which justified some recompense to her for increase in the farm's value. She further relied on the statutory presumption

---

1. See appendix for recitation of Points Relied On as they appear in appellant's brief.

regarding assets acquired during the marriage to qualify the 110 acres and other property for division as marital property regardless of the source of funds.

 The trial court was not well served either by the quantity or quality of evidence from the parties on issues of asset identity and value. Regardless of such deficiencies, however, the trial court was obligated to decide the controversy presented and specifically to announce which assets were non-marital and which were marital and to set apart item by item the allocation of non-marital property and the division of marital property. As the judgment was rendered, no decisions were made on these issues and it cannot be ascertained with specificity what assets were set apart to Wendell nor can it be determined what assets comprised the "approximately" one-half of net worth allotted to marital and one-half to non-marital property. In failing to render the judgment required, the trial court has not exhausted its jurisdiction. *Anspach v. Anspach, supra.*

 Substantial tracts of real estate were involved in this case. Where real estate is affected by a dissolution decree either by setting apart non-marital property and thereby extinguishing one spouse's claim through the marriage relationship or by division of marital property as equivalent to a conveyance, full legal descriptions must be included in the judgment. Such is necessary to the end that Section 452.330–5, RSMo Supp.1973 requiring filing of the decree in the office of recorder of deeds be effective in dispelling future questions as to land titles.

 Comment is also required on the omission from the judgment entry of any statement as to value of particular assets or as to the aggregate value of assets assigned to either party. By the specific direction of Section 452.330–1(2), RSMo Supp.1973, the court is obligated not only to allocate assets but also to evaluate the property set apart to each spouse. Where the decree does not include both elements, no final judgment results and the appellate court is without

jurisdiction. *Nilges v. Nilges,* 564 S.W.2d 262 (Mo.App.1978). Without the benefit of the trial court's finding as to asset values, meaningful appellate review of property division is precluded.

On remand, it will be the prerogative of the trial court to reopen this case for such further evidence as may be deemed appropriate to furnish the factual basis for rulings on the issues of property identification, allocation and valuation as required. The record at hand does, as noted, appear less than adequate to enable the trial court to perform the judicial function imposed by the statute.

The judgment of October 31, 1977 is affirmed insofar as it grants the order of dissolution and awards custody of the children. In all other respects, the case is remanded for further proceedings consistent with this opinion.

All concur.

## APPENDIX

### APPELLANT'S POINTS RELIED ON:

#### I.

THE FARM OF 640 ACRES INHERITED FROM HUSBAND'S AUNT IS NOT MARITAL PROPERTY; NOR IS THE 110 ACRES PURCHASED BY HUSBAND FROM INSURANCE MONEY RECEIVED ON DEATH OF HIS SON, NOR IS THE $5,000.00 TIME CERTIFICATE IN CHILLICOTHE STATE BANK A PART OF THE MARITAL ASSETS AS IT WAS INHERITED FROM HIS SON. THE FACT THAT THE WIFE SIGNED THE DISASTER LOANS AND DEEDS OF TRUST DOES NOT MAKE THE LANDS MARITAL PROPERTY.

#### II.

THE TRIAL COURT IN HIS ORDER ABUSED HIS DISCRETION

(A) IN THAT HE IGNORED THE FACT THAT THE RESPONDENT WIFE HAD BEFORE THE SEPARATION TAKEN $30,000.00 WORTH OF DOGS;

(B) IN THAT HE OVERLOOKED THE $4,500.00 TIME CERTIFICATE OF WIFE PURCHASED WITH MARITAL FUNDS;

(C) IN THAT HE OVERLOOKED THE FACT THAT SHE HAD PURCHASED A TRUCK WITH MARITAL FUNDS;

(D) THAT IN HIS FINDING HE DE-LIVERED TO THE WIFE A PROPERTY IN CHILLICOTHE VALUED AT $14,-000.00, HER TRUCK, HER TIME CERTIF-ICATE OF DEPOSIT OF $4,500.00 AND PERMITTED HER TO KEEP THE $30,-000.00 WORTH OF DOGS;

(E) IN THAT HE SADDLED THE HUSBAND WITH PAYING ALL DEBTS EXCEPT THE DEBT ON THE WIFE'S TRUCK AND WHICH DEBTS EXCEED-ED THE ASSETS OF THE MARITAL PROPERTY BY IN EXCESS OF $25,-000.00;

(F) THAT HIS ORDER GIVES THE WIFE A PREMIUM FOR HER INFIDELI-TY AND PENALIZES THE HUSBAND FOR HER INFIDELITY IN THE SUM OF $25,000.00 IN DEBTS AND GIVES HER $48,500.00 IN ADDITION.