In re the MARRIAGE OF Reginald W. DUSING, Petitioner-Respondent,

and

Mary T. Dusing, Respondent-Appellant.

Nos. 12754, 12992.

Missouri Court of Appeals,
Southern District,
Division Three.

June 23, 1983.

Robin E. Fulton, Maurice B. Graham, Schnapp, Graham & Reid, Fredericktown, for respondent-appellant.

G.H. Terando, Little, Million, Terando, & Associates, P.C., Poplar Bluff, for petitioner-respondent.

MAUS, Judge.

The husband is the petitioner in this action that dissolved a marriage of eight years duration. Both before and after the husband moved from the family residence on June 9, 1981, the wife entreated the husband to continue their efforts to preserve the marriage. Initially, she denied the marriage was irretrievably broken. However, by her amended answer she admitted that fact. Following a hearing on the remaining issues, the trial court entered a decree dissolving the marriage. The decree also dealt with the financial aspects of that dissolution and custody of and support for the four-year-old son of the parties. The financial provisions of the decree will

be hereafter noted. The trial court awarded custody of the child to the wife, subject to detailed provisions for visitation and temporary custody by the husband. Basically, under those provisions the husband was entitled to temporary custody for two days each week, for 60 days during the summer months and on alternate holidays.

However, the custody granted to the wife was made conditional. In general terms those conditions were that the wife continue to reside in Butler County so long as the husband continued to reside in Butler County. In the event the wife violated that condition or other provisions of the decree concerning custody or visitation or restrictions, custody of the child "shall be immediately transferred to the Petitioner." The condition was amplified by the following: "The Respondent, during any calendar year, may spend up to sixty (60) days either all at once or from time to time, away from Butler County with said child for purposes of vacations, holidays, emergencies and other matters that might normally cause her to visit another or travel to a county other than Butler or a state other than Missouri." In the decree the trial court recognized the wife's desire to move to her home state of Louisiana. However, it found removal from the jurisdiction would be detrimental to the child's welfare. The wife has appealed and presents four points of alleged error. A very brief summary of the factual background for the consideration of those points follows.

The parties were married on June 1, 1974 in Houston, Texas. Both were 27 years old. At that time the parties had but few assets. The husband was a medical student at Baylor University. The wife had a B.S. degree in Business Administration from the University of Southwest Louisiana. At the time of the marriage she was employed in marketing with Exxon.

Following the husband's graduation, they moved to Columbia, Missouri. There the husband completed his education in 1978. He was certified as a family practitioner in July 1979. The wife worked at Stephen's College and at a bank. In July of 1978 the parties moved to Poplar Bluff. The husband became associated with a clinic. The child was born on March 29, 1978. The wife has not been employed since that time. The husband's distributions from the clinic in round figures have been: 1978—$30,000; 1979—$53,000; 1980—$95,000; 1981—$140,000. 1981 was said to be an extraordinary year. His anticipated distribution for 1982 was $85,000–90,000. He did personally incur professional out of pocket expenses of approximately $4,000 per year.

The evidence concerning the personal relationship of the parties is sketchy. The husband described the wife as an inflexible, intolerant person. He said she had certain talents, for example, "she does pottery very well." She was of no help in financial planning and that was the source of many arguments. Undefined marital difficulties commenced in Columbia. After moving to Poplar Bluff, they participated in marital counseling for an extended period. The wife presented no evidence concerning the nature of the marital difficulties. The husband decided the marriage was over in May 1980, although he did not move from the home until June 1981.

In June 1980, he was introduced to a registered nurse at a local hospital. They were attracted to each other. The husband testified that he saw her regularly and that, since January 1981, they frequently engaged in sexual intercourse. No plans for marriage had been formulated, but he said, "She will still remain my friend." In May 1981, before the husband moved out, the wife asked him to try one more time. He agreed. But, over the next two and one-half weeks he became very depressed. He could not go on with the masquerade the marriage was going to get better. He observed it had not during counseling nor "in three years of trying during the residency to apply my skills."

The son, who was almost four years old at the time of trial, was described by the parties to be a very bright child. Each party sought custody. The father said he should have custody because the gifted child "needs somebody who is probably a little bit more skilled or professionally trained in fathering or parenting than per-

haps the average father." He admitted the wife was a loving and caring mother but she had some personal problems dealing with such a creative child. He cited the fact the wife screamed at the child, "Why can't you make up your mind" when he had told her he wanted an egg and then said, "No, I want cereal; no, I want pancakes; no, I want waffles." The mother said she had observed other mothers and they all yelled at their children. She described her attention to the child as playing with him, playing with him with educational toys, reading to him and taking him outside and on walks. While on occasion she fussed at him, they always made up, and she related instances of his demonstration of affection for her. She characterized their relationship as "real good, real good." Neither party had any relatives in the Poplar Bluff area. The wife did not care to live in Poplar Bluff and planned to move to Louisiana in order that she and the son could be near her family.

■ The wife's first point is that the trial court erred in decreeing that the husband would be awarded custody of the child if she moved from Butler County or violated the decree concerning visitation or custody, as more fully heretofore set forth. The husband defends the provision by citing the need of the child for contact with both parents. The validity of this proposition in general cannot be disputed. *Cissell v. Cissell,* 573 S.W.2d 722 (Mo.App.1978). But, even if valid, the provision in question is a drastic method to reach that result. The wife, as well as the husband, is entitled to consideration in the site of her employment and where she desires to live. It is understandable that she would not care to live in the community in which the separation occurred and in which the husband's friend resides. Provisions for a relationship with both parents can be made other than by confining the wife's residence to Butler County. *In re Marriage of Bradford,* 557 S.W.2d 720 (Mo.App.1977).

This court has not been cited to, and independent research has not revealed, a decision in this state approving such a provision. *In Elfrink v. Elfrink,* 620 S.W.2d 386 (Mo.App.1981), the parties stipulated the custodial mother would not move from a specified county. When the mother moved a considerable distance, the trial court modified the decree to award custody to the father. The court of appeals observed that there was no showing that modification was in the best interests of the children. The decree of the trial court was reversed.

■ The removal of a child to another state has been the subject of many decisions. Generally, such a removal is not favored when the practical effect of that removal will be to deprive the child of desirable contact with the noncustodial parent. *Pelts v. Pelts,* 425 S.W.2d 269 (Mo.App. 1968). However, such removal is not per se cause for modification. *K___ R___ (S___) D___ v. C___ D___ S___,* 646 S.W.2d 428 (Mo.App.1983). It is one very important factor in determining if such a change in circumstances has occurred to cause modification of the custodial decree to be in the best interests of the child. § 452.410; *In re Marriage of Griswold,* 623 S.W.2d 560 (Mo. App.1981); *Knoblauch v. Jones,* 613 S.W.2d 161 (Mo.App.1981). "Jurisdictional problems and visitation privileges of a noncustodial parent are not insuperable obstacles when removal of a minor child to another state is at issue.... In our highly mobile society it would be unrealistic to inflexibly confine a custodial parent to a fixed geographical area if removal to another jurisdiction was consistent with the best interests of the minor child." *In re Marriage of Bard,* 603 S.W.2d 108, 109 (Mo.App.1980). Factors to be included in a consideration of such modification have been discussed in many decisions. *Pender v. Pender,* 598 S.W.2d 554 (Mo.App.1980); *Girvin v. Girvin,* 471 S.W.2d 683 (Mo.App.1971). Similar factors would apply to a removal from southeast Missouri to Louisiana as apply to a removal from southeast Missouri to southwest Missouri. *Elfrink v. Elfrink,* supra.

Section 452.375.3 became effective after the decree of the trial court. That subsection specifically deals with the removal of a child from this state by a custodial parent. To a large extent that subsection is a codifi-

cation of case law. Prior decisions may provide guidelines for the judicial approval of such removal as provided in that subsection. It has been held that a similar statute, under the doctrine of expressio unius est exclusio alterius, is evidence of a legislative intent that a court shall not have the power to order that a custodial parent live in a designated part of the state or lose custody of a child. *Groh v. Groh,* 110 Wis.2d 117, 327 N.W.2d 655 (1983).

However, the propriety of the provision in question need not be analyzed upon that statutory basis. The decree provides for an automatic modification of custody, with no provision for visitation by the wife, without regard to circumstances at the time. The custody of children should not be modified as a punishment for a parent. *Hahn v. Hahn,* 569 S.W.2d 775 (Mo. App.1978). Section 452.410 provides that a court shall modify a custody decree only upon a finding of the statutory prerequisites and a finding "the modification is necessary to serve the best interests of the child." In considering a similar provision concerning a mother's association with a specified person, it has been said:

> A provision in the decree that the violation of a condition would automatically result in the transfer of custody from one party to the other would not be given effect by the court upon a later motion to modify, .... ... Having found a violation of the condition, the court must still find from all the circumstances that the welfare of the child is served by the custody transfer. *N.K.M. v. L.E.M.,* 606 S.W.2d 179, 183 (Mo.App.1980).

The provisions in question can result in a change of custody irrespective of the circumstances then existing. It was error to include in the decree the provisions in question.

In argument under the above point, the wife asks this court to amend the decree to authorize her to move with the child to Louisiana. This request does not comply with Rule 84.04(d) in stating a point that the trial court erred in not entering such a decree. But, irrespective of that procedural deficiency, the evidence does not establish the trial court so erred. The evidence of her desire has been noted. The evidence does not show where she planned to live in Louisiana, what members of her family would be nearby, or any other living conditions where she planned to live. The evidence falls far short of providing a basis for a determination it was in the best interests of the child to live somewhere in Louisiana. *Girvin v. Girvin,* supra.

The wife's next two points concern the fiscal aspects of the dissolution. Their property consisted of a home, two motor vehicles, household furnishings, recreational equipment, personal effects and intangibles. Each was possessed of various items of household furnishings and recreational equipment as his or her separate property. At the request of the husband, an appraiser made a detailed list of the household furnishings and recreational equipment and valued each item. The list comingled separate and marital property. The wife had prepared a detailed list of such items by categories of his separate property, her separate property, camera and equipment, and other marital property. On the appraiser's list the husband, by an "x", indicated the items he particularly wanted. He suggested each party be awarded the items each particularly wanted and be charged with the value thereof. The balance of the items were to be divided so that the value of all the items received by each party would be equal.

The trial court found the value of the items to be as listed on the appraiser's list except as otherwise agreed in testimony. While this provides a basis for determining the value of such items, those values are not set forth in the decree.

The decree provided the items as listed by the appraiser would be equally divided by value. Each party was to receive the items they indicated they particularly desired. In the event of conflict, the selection by the wife was to prevail. Generally, the remainder was to be divided by placing a dividing line on the list so that each received items equal in value.

By her second point, the wife contends the trial court erred in disposing of the listed items in this manner for two reasons. Her first argument is that the decree did not set apart to each party his or her separate property and did not value the property. The statement of this point requires this court to examine its jurisdiction on appeal. While the decisions are inconsistent and irreconcilable, in divers circumstances the failure of the trial court to fully deal with the property of the parties to a dissolution has been held to be a failure to exhaust its jurisdiction. *Fields v. Fields,* 584 S.W.2d 163 (Mo.App.1979). This has led to the conclusion that, except for the dissolution of the marriage, such decrees are not final. Of course, when a decree is not final, an appellate court has no jurisdiction of an appeal taken therefrom and such an appeal must be dismissed. *Marks v. Marks,* 618 S.W.2d 249 (Mo.App.1981).

It has been so held when the trial court has not set apart to the parties their separate property. *Marks v. Marks,* supra; *Merritt v. Merritt,* 616 S.W.2d 585 (Mo.App. 1981); *In re Marriage of Wineland,* 609 S.W.2d 464 (Mo.App.1980); *In re Marriage of McSwain,* 601 S.W.2d 656 (Mo.App.1980); *In re Marriage of Schulz,* 583 S.W.2d 735 (Mo.App.1979). The same is true when the trial court has not fully distributed the marital property. *Busch v. Busch,* 618 S.W.2d 244 (Mo.App.1981); *Schulz v. Schulz,* 612 S.W.2d 380 (Mo.App.1980); *Wansing v. Wansing,* 612 S.W.2d 55 (Mo. App.1981); *In re Marriage of Wineland,* supra; *Wilhoit v. Wilhoit,* 599 S.W.2d 74 (Mo.App.1980); *Nilges v. Nilges,* 564 S.W.2d 262 (Mo.App.1978); *Anspach v. Anspach,* 557 S.W.2d 3 (Mo.App.1977); *Corder v. Corder,* 546 S.W.2d 798 (Mo.App.1977). It has also been indicated that a decree is similarly deficient when it does not declare the value of the separate property set apart. *Branstetter v. Branstetter,* 637 S.W.2d 347 (Mo.App.1982); *Merritt v. Merritt,* supra; *Salisbury v. Salisbury,* 614 S.W.2d 558 (Mo.App.1981); *Fields v. Fields,* supra. The same is true when the marital property has not been so valued. *Shepherd v. Shepherd,* 618 S.W.2d 709 (Mo.App.1981). However, it is also held that where evidence of values is before the trial court and the appellant has not specifically requested a determination of values, a decree is nonetheless final in the absence of such an express determination. *Berry v. Berry,* W.D. No. 33322, May 10, 1983; *Flach v. Flach,* 645 S.W.2d 718 (Mo.App.1982); *In re Marriage of Sharp,* 630 S.W.2d 588 (Mo.App. 1982); *Cavallaro v. Cavallaro,* 620 S.W.2d 420 (Mo.App.1981); *Reynolds v. Reynolds,* 610 S.W.2d 311 (Mo.App.1980); *Meecey v. Meecey,* 603 S.W.2d 62 (Mo.App.1980); *Waitsman v. Waitsman,* 599 S.W.2d 42 (Mo. App.1980). The same is true where there is no attack upon the fairness of the distribution. *Cavallaro v. Cavallaro,* supra. Many of the decisions referred to point out that because of a deficiency in one or more of such respects, the record does not provide a basis for meaningful review. *Merritt v. Merritt,* supra; *Fields v. Fields,* supra. In some instances, rather than dismiss an appeal, an appellate court has distributed undistributed property. *Flach v. Flach,* supra; *Nilges v. Nilges,* 610 S.W.2d 58 (Mo.App. 1980); *Marriage of Robinson,* 570 S.W.2d 320 (Mo.App.1978). Or, it has remanded the case for limited purposes. *Salisbury v. Salisbury,* supra; *Wansing v. Wansing,* supra; *Glascock v. Glascock,* 607 S.W.2d 834 (Mo. App.1980); *Anspach v. Anspach,* supra. Some definitive guidelines were announced in *State ex rel. McClintock v. Black,* 608 S.W.2d 405 (Mo. banc 1980). In that case it was held that if undistributed assets were discovered before the time for appeal had run, when the issue of undistributed property is raised, the appeal must be dismissed. But, if the time for appeal has run, a decree is final even though it failed to distribute all of the marital property.

It is not necessary to further analyze or attempt to rationalize or reconcile these decisions. In this case the trial court did not fail to distribute all of the property of the parties. It did so without regard to whether it was separate or marital property. To the extent the decree did not set apart the separate property to the owner thereof, that was error. But, such error does not preclude this court from jurisdiction of the appeal.

■ Nor is the appeal premature because the decree does not expressly value each item of the property. Where the trial court did not expressly value items of property, it declared their value to be that determined by the appraiser. Those values were before the court. Neither party requested any findings of fact. Under these circumstances, the failure of the trial court to expressly declare the value of each item of property does not cause the decree to lack finality. *Waitsman v. Waitsman,* supra, and other cases cited supra.

■ Section 452.330 in part provides, "the court shall set apart to each spouse his property . . . ." The husband argues the failure of the trial court to do so is not error because the wife waived her right to require this to be done. It is true that in a few instances each party agreed that an item of his or her separate property could be distributed to the other party. This is not a general waiver of the statutory mandate. The wife has the right to require that her separate property be so set apart, and not awarded to her as a division of the marital property. This includes the right not to be charged with the value of her separate property in the apportionment of the marital property.

The evidence established the following items are the separate property of the husband: Technique turntable with speakers, Sony AM–FM, Pioneer Stereo tape deck, records, small black and white television. The evidence further established the value of those items is $260.

The evidence established the following items are the separate property of the wife: 4 walnut cane dining chairs, 2 oak captain chairs, 1 oak rounded glass china cabinet, 1 antique sofa, 2 antique overstuffed chairs, 2 marble top end tables, 1 oak rocker, 1 antique folding mirror, 1 plantation desk, 1 oak can bottom dining chair, 1 upholstered seat oak vanity chair, 1 cane bottom walnut chair, 1 maple end table, 2 antique porcelain lamps, 1 table with antique sewing machine legs, 1 antique bar stool, 2 children's desks, Kenmore sewing machine, antique double size oak bed and dresser, 5 oak bentwood chairs, 1 antique mirror, 1 dresser for Brent, 1 antique clothes rack, 1 hexagonal end table, wicker hanging chair. The evidence further established the value of those items is $3,060. The parties agree that the Konica 35mm camera, even though the separate property of the husband, should be awarded to the wife. The value of that property is $60.

■ The wife next argues that the portion of the decree providing distribution of the household furnishings and personal effects by agreement and the placement of a dividing line on the exhibits, subject to the equalization of values, is unenforceable. "An essential requirement of a judgment is that it be sufficiently certain in its terms to be susceptible of enforcement in the manner provided by law. To comply with this requirement, the judgment must adjudicate the controversy to a conclusion which permits issuance and processing of an execution without external proof or another hearing." *Ravenscroft v. Ravenscroft,* 585 S.W.2d 270, 273 (Mo.App.1979). Also see *Hopkins v. Hopkins,* 626 S.W.2d 389 (Mo. App.1981); *Brolinson v. Brolinson,* 564 S.W.2d 911 (Mo.App.1978); *Sunderwirth v. Williams,* 553 S.W.2d 889 (Mo.App.1977). But compare *Payne v. Payne,* 635 S.W.2d 18 (Mo.1982). It is obvious that portion of the decree does not, for many reasons, meet this standard.

■ This court is authorized to enter such judgment as the trial court ought to give. Rule 84.14. However, it is the general practice of this court to remand a cause for the entry of an enforceable and proper decree. *Wansing v. Wansing,* supra. Only because of the particular issues and distinctive circumstances involved in this case and the need for the early entry of a final decree will this court exercise its discretion and finally dispose of the case.

■ The husband lives in an apartment that he has furnished. It is appropriate those furnishings be distributed to him. The wife is, for at least a limited time, to live in the family home. She has custody of the child. It is appropriate the balance of the household furnishings be distributed to

her. The parties agreed upon the distribution of the recreational equipment and certain other items. It is appropriate those items be so distributed.

Accordingly, the following items of marital household furnishings and recreation or hobby equipment are distributed to the husband: Household furnishings—rocking chair, small desk, bookshelf, gray linen chair, Japanese silk print, cherry wood silver chest, Curtis Mathes 25″ color television, portable oak bar, box springs and mattress, casual chair, 2 filing cabinets, small desk, Eureka vacuum, Tappen microwave oven, blender, toaster oven, bar stool, small black and white television, small dresser, African artifacts, 5-drawer chest, Transart print (2 geese flying), Pioneer VCR, wireless phone. Cameras and equipment—assorted darkroom equipment, black and white enlarger, camera color enlarger, Kodak slide projector, Bronica camera, Cannon E–F camera, Cannon A–1 camera, Vivatar 285 flash attachment, wide angle lens, lens, flash attachment, telephoto lens, aluminum camera case, light meter and various equipment, Poloroid SX–70 with flash, Retina camera. Miscellaneous equipment—books, gas barbecue grill, meat smoker, miscellaneous auto parts, miscellaneous garage and camping equipment. The value of husband's household furnishings and recreational or hobby equipment is $5,065. All other items of household furnishings, including silverware, silverware chest, crystal and china, hand and garden tools and recreational or hobby equipment are found to be marital property and are distributed to the wife. The value of the items so distributed to the wife is $10,856.

By a separate point, the wife contends the trial court erred in not declaring the husband's medical degree to be marital property. This viewpoint has been approved where it was necessary to reach an equitable result when one spouse forfeits his or her education to work and enable the other spouse to obtain an education. Annot., Marital Property—Professional Degree, 4 A.L.R. 4th 1294 (1981). This reasoning has particular appeal when a spouse who has so benefited has attained an advanced education that yields a generous income. It is more appealing when that spouse's attraction to a third party leads to the termination of the marriage. Perhaps the doctrine is but a shorthand expression of the action of a trial court, when there are sufficient marital assets, in recognizing the indirect contribution of a spouse to those assets. *In re Marriage of Vanet*, 544 S.W.2d 236 (Mo.App.1976).

However, it is not necessary to further consider this point. At the time of the marriage the husband apparently had at least one more year in medical school. However, the wife had completed her education. The wife did work during the husband's residency, but he too earned a substantial income. Without passing upon the viability of the doctrine, it would not as such be applicable to this case.

By a separate point, the wife contends the share of the marital property distributed to her is inadequate because the trial court did not properly consider the husband's marital misconduct. She asserts the decree of the trial court distributed 51.4% of the parties' assets to her and 48.6% to the husband. She also emphasizes the great earning capacity of the husband is just coming into fruition. The husband counters that in May 1980, he concluded the marriage was over and his extramarital relationship did not cause the termination of the marriage. The decree recites evidence of that misconduct was considered, but there is no indication of how it was considered or the weight assigned to it.

Countless decisions recognize that the trial court has broad discretion in the division of marital property. *Miller v. Miller*, 635 S.W.2d 350 (Mo.App.1982). It is also recognized that such division is to be a just division and not necessarily an equal division. *In re Marriage of Arnold*, 632 S.W.2d 28 (Mo.App.1982). This is said to be particularly true where one party has engaged in marital misconduct. *Rasmussen v. Rasmussen*, 627 S.W.2d 117 (Mo.App.1982).

As noted, the decree of the trial court does not disclose any conclusion drawn from consideration of the husband's

admitted marital misconduct. The misconduct of a spouse in combination with other factors has, under circumstances somewhat similar to the instant case, resulted in the following divisions of marital property. Wife—66⅔%; husband—33⅓%. *Hurtgen v. Hurtgen,* 635 S.W.2d. 69 (Mo.App.1982). Wife—87%; husband—13%. *Schwarz v. Schwarz,* 631 S.W.2d 694 (Mo.App.1982). Wife—$70,000, husband—$45,000. *In re Marriage of Brewer,* 592 S.W.2d 529 (Mo. App.1979). Wife—74%; husband—26%. *In re Marriage of Vanet,* supra. In this case there must also be considered the wife's sharing of and contribution during the husband's less productive years and his potential earning capacity. Considering the factors, perhaps unique in this case, tempered by the limited accumulation of the parties, there should be first distributed to the wife $40,000 from the intangible Shearson American account. The balance thereof should be divided equally. This distribution will also offset the husband's IRA account, Keogh account and larger checking account which should be distributed to him.

To summarize, the decree of the trial court is modified in the following respects. The child is placed in the custody of the wife, subject to visitation and temporary custody of the husband as provided in paragraph 12 and the first paragraph of paragraph 13 of that decree. The last sentence of paragraph 12, the second paragraph of paragraph 13 and other provisions of that decree relating to child custody are reversed and vacated. Those portions of paragraphs 4, 5, 6, 7 and 8 distributing the parties' separate personal property and dividing the marital personal property are modified to provide as follows: The separate property is distributed as set forth above. The marital household furnishings, recreational or hobby equipment, and miscellaneous items listed above are distributed as set forth above. Of the balance of the marital personal property, the following is distributed to the wife: $40,000 from the Shearson American account; one-half of the remainder of the Shearson American account; her checking account which was approximately $2,500; the savings account of approximately $100; New England Mutual Life Insurance policy on her life; 1978 Toyota. In the event the Shearson American account has been depleted by the husband for purposes other than the payment of federal and state income taxes for which the parties were jointly liable, he shall restore such amount to said account; and in the event such account, as so restored, has been depleted by the payment of federal and state income taxes for which the parties were jointly liable to the extent that $40,000 cannot be first distributed to the wife, the husband shall pay one half of such deficiency to the wife. The trial court is directed to hold a hearing to determine the amount due the wife by the husband by reason of the aforesaid and the wife is granted a lien upon the marital assets distributed to the husband to secure such payment. The following is distributed to the husband: One-half of the remainder of the Shearson American account; his IRA account of approximately $5,000; his Keogh account of approximately $7,800; his checking account which was approximately $6,000; a Krugerrand; New England Mutual Life Insurance policy on his life; Northwestern Life Insurance policy on his life; oil lease of little value; 1980 Toyota subject to an encumbrance which he is to pay. Paragraph 14 of that decree is rendered unnecessary and is reversed and vacated. The remainder of that decree is affirmed.

After the wife filed a notice of appeal from the decree of dissolution, she filed a motion for attorney's fees of $3,000 and costs on appeal. By agreement, the motion was submitted upon stipulations concerning the services rendered and to be rendered on appeal without further evidence. The trial court found the wife had the ability to pay and denied the motion. The wife's appeal from this denial has been consolidated with the appeal from the dissolution decree.

The trial court does have broad discretion in awarding or denying attorney's fees. *Elliott v. Elliott,* 621 S.W.2d 305 (Mo.App.1981). The decision of the trial court was based upon the wife's ability to pay, or absence of need. Her only demon-

strated ability to pay would be from the allowances and property heretofore mentioned. "Need, however, is only one factor to be considered in ordering payment." *Hahn v. Hahn,* supra, 569 S.W.2d at p. 778. The trial court's exercise of discretion must be based upon a consideration of all relevant factors, including financial resources. *Kieffer v. Kieffer,* 590 S.W.2d 915 (Mo. banc 1979). Of importance is the relative ability of the parties to pay. *Elliott v. Elliott,* supra. Presumably, the awards of maintenance and child support are needed for those purposes. In view of the present circumstances, the wife's invasion of the property set off to her to present a meritorious appeal should be limited. *In re Marriage of Arnold,* supra; *Bray v. Bray,* 629 S.W.2d 658 (Mo.App.1982). The relevant factors in this case are much like in *LoPiccolo v. LoPiccolo,* 547 S.W.2d 501 (Mo.App. 1977). In that case the court concluded: "The trial court erred in denying the motion for attorney's fees and costs of appeal because the appeal is not clearly. without merit and the transcript indicates that, as between the two parties, the respondent can better afford to bear the extraordinary expenses of the appeal." *LoPiccolo v. LoPiccolo,* supra, at p. 506. Also see *Orth v. Orth,* 637 S.W.2d 201 (Mo.App.1982); *Bray v. Bray,* supra; *In re Marriage of Kreienheder,* 610 S.W.2d 313 (Mo.App.1980). In this case an exercise of discretion considering all of the pertinent factors mandates the approval of such an allowance.

However, the amount of such an allowance may be determined by this court without additional evidence. *Green v. Green,* 623 S.W.2d 265 (Mo.App.1981). An allowance of $2,000 is reasonable for such attorney's fees and expenses. Judgment on said motion is entered for the wife in that amount.

GREENE, C.J., CROW, P.J., and FLANIGAN, J., concur.