**Catherine KOENIG,**
**Petitioner–Appellant,**

v.

**Timothy R. KOENIG,**
**Respondent–Respondent.**

**No. 55706.**

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 28, 1989.

Theodore S. Schechter, Bruce E. Friedman, Marie A. Woodruff, Clayton, for petitioner-appellant.

Richard D. Gerber, St. Louis, for respondent-respondent.

REINHARD, Judge.

Mother appeals from the denial of her motion to modify dissolution decree and from the granting in part of husband's cross-motion to modify. We affirm in part, reverse in part and remand.

The parties' marriage was dissolved in 1984. Their separation agreement, which was incorporated into the decree, gave mother custody of their son, Sean, now age eight; father was given visitation rights. The decree provided, "residence of [Sean] shall not be changed from the state of Missouri, nor shall the child be removed from the state of Missouri, without specific authorization of the Court, or written consent of the noncustodial parent."

After the dissolution, mother became employed as the director of guest services and quality control at the Breckenridge Frontenac Hotel in St. Louis County. She met her current husband, a resident of Manchester, New Hampshire, when he stayed at the hotel in March 1986. She did not see him again until September 1987 when he again stayed there. Thereafter, he visited St. Louis on approximately four weekends to date mother. They became engaged in October 1987 and were married on November 20, 1987. At the time of the marriage, Sean had met mother's new husband three or four times. Sean did not attend the wedding, and mother did not inform him she had remarried until June 1988. Mother quit her job at the hotel, and she and Sean have spent a period of time with her new husband in New Hampshire. There, Sean has made two friends.

The new husband is divorced and has two emancipated children. He is a life long resident of New Hampshire where he is employed as a business agent for the Teamsters Union and is the elected police commissioner of Manchester. Mother helped select the Cape Cod style house in which he lives. According to mother, the house is in a residential area comparable to Kirkwood, Missouri.

Father remarried on November 21, 1987, after having lived with his new wife for three years prior to the marriage. Sean stayed with father and his new wife for periods of time while they were unmarried. Father now lives in a large home in St. Charles County. He is employed as a cement mason at Midwest Mudjacking, a company in which he has a 50% ownership interest. He also has a one-half interest in some commercial rental property.

On March 16, 1988, mother filed a motion to modify requesting that she be allowed to remove Sean to Manchester, New Hampshire to live with her and her new husband. She also asked that child support be increased from $300.00 to $500.00 per month. Father filed a cross-motion to modify wherein he requested primary legal and physical custody.

A hearing was held on August 17, 1988. Father and his wife testified that during the past two and one-half years Sean spent over 50% of the time with them; mother disputed this fact. There was substantial testimony from father, his wife, his wife's daughter and other members of his family as to the closeness between Sean and them. Father said Sean needed to be around him and be raised particularly by him. He said it was in Sean's best interest to stay in St. Louis where all his family loves him. Both parties testified that Sean is well acclimated to St. Louis, that he has strong friendships here, and that he is doing extremely well at the private school where he is enrolled.

Mother testified that she loved her new husband and she did not know what would happen if she had to live apart from him. Although she had not discussed the prospect with her new husband, she stated she would prefer staying in St. Louis with Sean instead of moving to New Hampshire without him. She thought it would be in Sean's best interest to be with her no matter where she was.

Sean was questioned in the presence of counsel and testified that, given the choice

of living in New Hampshire with his mom or in St. Louis with his dad, he would rather live with his mom. He stated however, that his wish would be to stay in St. Louis with both parents.

Mother was recalled to the stand by father's counsel and was asked "After what you've heard today in court do you think that it is in Sean's best interests to live in St. Louis where both of his biological parents are?" She answered, "I would think, yes."

Mother's husband, although aware of the hearing, was not present.

The trial court made extensive findings and conclusions. Among them was the finding that the interaction and interrelationship between Sean and both parents is excellent. The court noted that the relationship between Sean and father's relatives is particularly unique and excellent. The court further found that father had physical custody of Sean at least 50% of the time for the past two and one-half years resulting in a good nurturing atmosphere. The court found there is a strong need to have the relationship between Sean and father continue.

The court also noted "that little testimony was adduced by [mother] in regard to her living arrangements in New Hampshire, the nature of her husband's relationship with Sean and the status of Sean's relationship with [mother's] husband's relatives in New Hampshire. The court further notes that [mother] has no relatives in New Hampshire."

Finally, the court found "that both parties have a strong desire, ability and willingness to actively provide for Sean ... [and] that there is a strong need for Sean to continue a close relationship with both parents." The court made special note of the unusually good manner in which mother and father have dealt with the problems of raising a minor despite their divorce. "Since their dissolution, both parties have shown a strong desire to put Sean's interests first and foremost by allowing Sean

equal time with both parents and by participating in all of Sean's activities."

The court concluded that the parties' remarriages amounted to a substantial and continuing change in circumstances but that a modification with respect to primary custody was not in Sean's best interest. The court concluded it is in Sean's best interest to remain in St. Louis where both parties can spend equal time with him. To assure Sean's permanence in Missouri, the court in its conclusions of law stated, "in the event [mother] chooses to reside outside the State of Missouri, then at that time it would be in the best interest of Sean to be in the primary custody of [father]." In the same regard, the court in its decree awarded father "additional temporary custody and visitation one day per week upon 48 hours notice to [mother]." The court also ordered mother not to make it impractical for father to exercise his visitation rights. Mother's request to remove Sean was denied as was her request for increased child support.

On appeal, mother primarily challenges the denial of her request to remove Sean to New Hampshire.[1] We note that the decision of the trial court will be affirmed unless it is unsupported by substantial evidence, unless it is against the weight of the evidence or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We conclude there was substantial evidence supporting both the denial of mother's request to remove Sean and her request for additional maintenance.

■ The issue of permitting a parent to remove a child from the jurisdiction of the court has been a continuing and troubling one. In *Baer v. Baer*, 51 S.W.2d 873 (Mo. App.1932), this court was confronted with a case sharing features similar to those here. Both parents lived in St. Louis. Mother was contemplating remarriage and desired to move to New York, taking the parties' child with her. The trial court denied mother's motion and we affirmed with Judge Bennick stating:

1. Father does not appeal the denial of his cross-    motion for primary custody.

[T]he welfare of the child itself is the first consideration always to be kept in mind, and is far superior to the claim of either parent, whose own wishes and personal desires must be made to yield if seemingly opposed to such welfare....

....

Generally speaking, it is against the policy of the law to permit the removal of a minor child to another jurisdiction, due principally to the fact that upon the entry of a decree of divorce, the child becomes the ward of the court, and that upon its removal to another state, any subsequent order made pursuant to the court's continuing jurisdiction may be difficult, if not impossible, of enforcement. However, the obstacle of nonresidence is not to be regarded as an insuperable one; and notwithstanding the fixed policy of the courts, the removal of a child will nevertheless be permitted in those instances where it is made clearly to appear to the court that the best interest of the child itself will be thereby subserved.

*Id.* at 878.

However, modern transportation, lifestyles, attitudes and improved enforcement of divorce decrees under the uniform laws have resulted in relaxation of the rather rigid standards of the past. In fact, we cited *Baer* as authority in *Girvin v. Girvin,* 471 S.W.2d 683 (Mo.App.1971), in affirming a trial court's order permitting removal of a child to California. We observed,

Concerning what facts must be pleaded and proved to constitute a change in condition that would warrant the court to allow removal, the facts of remarriage, past custody of child by the moving party, the need of the parent to move from the state, and the tender age of the child are sufficient and warrant such an order to be made.

*Id.* at 685. The Southern District in *In re Marriage of Wofford,* 589 S.W.2d 323 (Mo. App.1979), approved an order allowing removal and stated,

The fact that [the wife] did not choose to remain in Missouri should not be a rea-

son by itself to deny her custody. While that would make it more difficult for visitations by the appellant, it is still proper to allow the children to be removed from this jurisdiction where it is in the best interests of the child.

*Id.* at 326. *See also Hart v. Hart,* 539 S.W.2d 679 (Mo.App.1976).

In 1984, the legislature enacted § 452.377, RSMo 1986, which provides:

A person entitled to the custody of a child shall not change the residence of the child to another state or remove the child from this state for a period of time exceeding ninety days except upon order of the court or with the written consent of the parties with custody or visitation rights. Where the noncustodial person has been given visitation rights by the custody decree, such court permission may be granted only after notice to the person having visitation rights and after opportunity for hearing. Violation of a court order under this section may be deemed a change of circumstance under section 452.410, allowing the court to modify the prior custody decree.

The wife in *Samuels v. Samuels,* 713 S.W.2d 865 (Mo.App.1986), argued that the enactment of § 452.377 was a "consummation of a gradual repudiation of the quondam policy to forbid removal of a child to another state ... to the acceptance of a new policy—prompted by the reality of a society in motion—that does not rigidly confine custody to the state of decree...." *Id.* at 867. The court determined, however, that the statute does not affect the longstanding rule that courts deciding the issue of removal are still guided by the best interest of the child; the court found there was substantial evidence supporting the trial court's finding that the mother's plans for her new residence were too speculative and thus the court affirmed the denial of her request to remove her child. *Id.* at 870. In *Warrington v. Warrington,* 684 S.W.2d 368 (Mo.App.1984), on the other hand, the Western District found that removal was in the child's best interest. In doing so the court reversed the trial court's order denying wife's request to remove her

child. The court noted "[the mother's] marriage to [her new husband] was her choice and her right." The court went on to observe,

> What seems to have precipitated [the father's] motion [for custody] was [the mother's] marriage to Dr. Beard and her requested permission to move the children to California, neither of which facts are shown to be detrimental to the children. Indeed, the move to California appears to be in the best interest of the children and should therefore be permitted.

Our most recent pronouncement on the issue was in *Simpher v. Simpher*, 770 S.W.2d 488 (Mo.App.1989), wherein we distinguished *Samuels* and affirmed the trial court's order allowing removal. Judge Dowd reiterated that "the interference with the noncustodial parent's visitation privilege is not an insuperable obstacle when removal of minor children to another state is at issue." *Id.* at 489.

It is clear from the cases that "[i]n our highly mobile society, it is unrealistic to inflexibly confine a custodial parent to a fixed geographical area, if removal to another area for reasons such as change of employment, remarriage, etc., is consistent with the best interest of the minor children." *In re Marriage of Greene*, 711 S.W.2d 557, 564 (Mo.App.1986); *See also Elfrink v. Elfrink*, 620 S.W.2d 386 (Mo. App.1981). In determining the child's best interest, courts are instructed to consider "[t]he needs of the child for a continuing relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child." § 452.375.2(6), RSMo 1986.

Here, the court cited several factors, all supported by the record, for its conclusion that it was not in Sean's best interest to be removed to New Hampshire: the short acquaintanceship between mother and her new husband, the lack of discussion between them as to where Sean would reside after the marriage, the scarcity of testimony about her living arrangements in New Hampshire, and also the lack of testimony as to the nature of Sean's relationship with the new husband and his family. In this respect, the court's findings are similar to those in *Samuels* where the court was concerned with the uncertainty involved in mother's plans for residence in New York. Aside from these concerns, the court also stressed the benefits Sean is deriving from the relationship between himself and his relatives and friends in Missouri. The court noted that Sean "has been doing extremely well in school." The court placed special emphasis on mother's testimony that after hearing the evidence she thought it in Sean's best interest to remain in Missouri. We conclude the factors cited by the court are sufficient to deny the motion for removal. We are also convinced, after reviewing the record, that the trial court did not err in denying additional child support.

■ However, we conclude the trial court erred in two respects. First, as noted, the court concluded if mother chose to reside outside Missouri, then it would be in Sean's best interest to be in his father's custody. While this statement does not appear in the court's decree, the provision, regardless of its location, cannot stand as it amounts to an attempt to automatically modify custody in the future. In *In re Marriage of Dusing*, 654 S.W.2d 938 (Mo. App.1983), the decree provided, inter alia, that custody would be transferred from the wife to the husband if the wife moved from the county in which she was then residing. The court stated that even were the condition violated, the automatic transfer provision would not be given effect because a "court must still find from all the circumstances that the welfare of the child is served by the custody transfer." (*quoting N.K.M. v. L.E.M.*, 606 S.W.2d 179, 183 (Mo. App.1980)). The court in *Dusing* concluded, "The provisions in question can result in a change in custody irrespective of the circumstances then existing. It was error to include [them] in the decree...." *Dusing*, 654 S.W.2d at 943. Likewise, here, because the court cannot now determine what is in Sean's best interest in the future, the provision is invalid.

We also believe the court erred in its further attempt to assure Sean's permanence in Missouri by giving father an additional day of custody per week upon 48 hours notice. This provision gives father the power effectively to prevent *any* removal of Sean, even for periods of short duration. We have concluded there is substantial evidence supporting the denial of mother's motion for permanent removal. However, mother has a right to remarry, and her new husband cannot be forced to live in St. Louis. Because his mother and father have both remarried, Sean now is part of two families, and it is no doubt in his best interest that both families flourish. The court's decree makes this result a practical impossibility as to one of Sean's families. The court should have entered a decree not restricting as it did, but instead encouraging the development of a relationship between Sean, his mother and her new husband. Such a decree would liberally permit mother to take Sean with her on visits to New Hampshire.

Accordingly, the denial of mother's request to remove Sean to New Hampshire is affirmed, as is the denial of additional child support. That portion of the court's order providing for automatic transfer in the event mother resides outside Missouri is stricken. That portion of the court's order giving father additional visitation on 48 hours notice is reversed. The case is remanded to the trial court for the sole purpose of fashioning a decree permitting liberal temporary removal of Sean, at mother's expense, to New Hampshire.

GARY M. GAERTNER, P.J., and CRIST, J., concur.