**James CREGAN, Personal Representative for Robert M. Clark, deceased, Appellant-Respondent,**

v.

**Kathryn Claire CLARK, Respondent-Appellant.**

**No. WD 33300.**

Missouri Court of Appeals, Western District.

Sept. 27, 1983.

9. Footnote 8, supra.

Robert C. Paden and Michael W. Manners, Independence, for appellant-respondent.

Joseph Y. Decuyper and Hsiang-Lin Lee, Kansas City, for respondent-appellant.

Before SOMERVILLE, C.J., and SHANGLER, DIXON, PRITCHARD, WASSERSTROM, MANFORD and KENNEDY, JJ.

KENNEDY, Judge.

Both husband and wife have appealed from a judgment decreeing legal separation of the parties, which divided the marital property, set aside certain non-marital property to each party, and provided for maintenance and child support to be paid to the wife by the husband.

The judgment is affirmed with respect to the legal separation portion of the decree. The balance of the judgment is reversed and the cause is remanded for further proceedings.

Mr. Clark died May 27, 1982, while this appeal was pending, and his personal representative was substituted.

Husband and wife were married on April 2, 1960, and lived together until their separation on January 15, 1980. They had adopted two children, twin girls born June 16, 1968. Suit was commenced in April, 1980, and was tried in July, 1981.

Husband was a TWA pilot and had been working for TWA since September 7, 1964. His annual salary at the time of the trial was $85,000.

Husband had filed a petition for dissolution of marriage. Wife denied that the marriage was irretrievably broken. She requested that if the court found that the marriage was irretrievably broken, that the court grant a legal separation instead of a dissolution.

I

The threshold question is the effect of Mr. Clark's death during the pendency of this appeal. His personal representative has been substituted as a party but the personal representative has filed no supplemental brief herein.

Mrs. Clark has filed a supplemental brief in which she argues that the effect of Mr. Clark's death is the abatement of the cause of action.[1] She says we should reverse and "set aside" the entire decree. An abatement is a destruction of the cause of

---

1. A brief was filed by Mr. Clark before his death.

action. *In re Thomasson,* 159 S.W.2d 626, 628 (Mo.1942).

█ Mrs. Clark is correct in saying that a suit for dissolution or for legal separation abates upon the death of one of the parties before final judgment. *Matlick v. Matlick,* 212 Mo.App. 83, 251 S.W. 462, 463 (1923). (In *Matlick* the death occurred after trial and judgment but while the case was pending in the trial court upon a motion for a new trial. It was held, the court noting that the case was still in the bosom of the trial court when the death occurred, that the divorce judgment was not final and that the action was abated by the death of one spouse. It is not necessary to decide the point, but we assume that a case pending upon appeal, where the dissolution or the legal separation is itself challenged, as opposed to the other provisions of the decree, is in the same status as one pending in the trial court upon a motion for a new trial. See 1 C.J.S. Abatement and Revival § 128(b) (1975)). The dissolution or legal separation portion of the decree have not become "final" at the time of the death, in the sense that the court has not spoken the last word on the dispute and the rights of the parties are not conclusively settled. *State ex rel. Berbiglia, Inc. v. Randall,* 423 S.W.2d 765, 769 (Mo. banc 1968). Upon the death of a spouse there is no res for the decree to operate upon and the issue becomes moot. See *Anderson v. Dyer,* 456 S.W.2d 808, 814 (Mo.App.1970); see also *State ex rel. Weber v. Vossbrink,* 333 S.W.2d 298, 301 (Mo.App.1960).

█ However, when property rights of the parties are involved, the parties are entitled to have that aspect of the case decided though one of the parties has died; *Anderson v. Dyer,* supra at 814; *Caddell v. Caddell,* 204 Mo.App. 182, 222 S.W. 873 (1920); 1 C.J.S. Abatement and Revival, § 128(b) (1975); and our decision upon the property portion of the case requires incidentally that we pass upon the wife's appeal from the trial court's decree of legal separation. This is for the reason that, if the decree of legal separation falls, then the court's judgment respecting the property

and financial parts of the decree must fall as well, for the power to distribute the marital and non-marital property of the parties, the power to grant permanent maintenance and the like are all predicated upon the decree of legal separation. *Carr v. Carr,* 253 S.W.2d 191, 194 (Mo.1952).

II

The wife complains upon this appeal of the court's entering a decree of legal separation. As noted above, this is a point which must be decided for the whole decree rests upon the court's finding and judgment of legal separation.

█ Wife in her answer had denied under oath that the marriage was irretrievably broken. In such a case, in order for the court to decree dissolution or legal separation, it must find that the marriage is irretrievably broken. § 452.320.2(1), RSMo 1978.

Wife points out that the court made no specific finding of any of the factual situations and says that the decree must be reversed for that reason. She cites for that proposition *In re Marriage of Capstick,* 547 S.W.2d 522, 524 (Mo.App.1977). In that case, though, not only was there no specific finding by the court of any of the predicate statutory grounds, there was no evidence of any of them. In the case before us, there was evidence from which the court might reasonably have found one of the five statutory grounds, namely, that the wife "had behaved in such a way that the (husband) cannot reasonably be expected to live with the (wife)." § 452.320.2(1)(b), RSMo 1978. The husband summed it up in this testimony: "Well, she liked to be extravagant. She was to a certain degree incommunicative. We just did not have any—could not have any rational discussions on an adult level. She alienated me from the children. She was subject to extremely irrational behavior." He then proceeded to give instances illustrative of his conclusions. There could be a difference of opinion whether the behavior ascribed to Mrs. Clark was egregious enough to say that Mr. Clark

could not reasonably be expected to live with her—but on this point we yield to the trial court, who impliedly found in the affirmative.

*In re Marriage of Williams,* 593 S.W.2d 648 (Mo.App.1980), also cited by wife, the reversal of the decree was based not upon the absence of a specific finding of the statutory predicate, but rather upon the absence of evidence thereof.

■ It would indeed be more satisfying to see a specific finding that the court was satisfied that the wife's behavior was such that the husband could not reasonably be expected to live with her, but we do not think the absence of such a specific finding is fatal to this decree. From the court's finding that the marriage of the parties was irretrievably broken, we may infer that he was satisfied of the existence of the statutory predicate for such finding. The facts are deemed to be found in accordance with the result reached. Supreme Court Rule 73.01(a)(2); *Allmon v. Allmon,* 623 S.W.2d 40 (Mo.App.1981).

■ We hold that the decree of legal separation was supported by the evidence and that portion of the decree is affirmed.

### III

■ Wife complains that the husband received an excessive amount of the marital property. Her brief shows the marital property to be valued at $310,596. She says the decree gave her property valued at $128,736, and the husband property valued at $149,810. We find no error in this division of marital property in the circumstances of the case. A close analysis would add nothing to the precedential value of this opinion, since it presents no unusual or unique aspects.

### IV

■ A second criticism by the wife of the decree with reference to the division of marital property must be sustained, and the decree must be reversed and remanded to the trial court. The court set aside to the husband as non-marital property his TWA retirement plan. All the benefits had been earned during his TWA employment during the marriage. It was fully vested at the time of trial. Had the husband terminated his employment as of March 1, 1981 (the trial was in July, 1981), the retirement plan would have paid him $1,880 per month for life beginning at age 60—or at age 45 it would have paid him $750 per month. These presumably are lifetime annuities. Mr. Clark would have reached the age of 45 on September 17, 1982. The retirement plan at trial time was in its Stage II phase. See *Kuchta v. Kuchta,* 636 S.W.2d 663, 665 (Mo. banc 1982).

In such a case the retirement plan benefits are marital property and must be dealt with as such by the trial court. *Kuchta v. Kuchta,* supra.

Upon Mr. Clark's death a lump sum would be paid to a "designated beneficiary". This would be the amount contributed by the employer over the term, 4% of the employee's gross earnings. There is no evidence whether Mr. Clark had designated a beneficiary, or, if so, whom he had designated. This would amount to a substantial sum.

### V

■ Wife complains of the inadequacy of the maintenance allowed by the court. Here, too, she must be sustained. The court awarded her maintenance of $500 per month. She was 41 years of age at the time of the trial, and had never been employed outside the home. She had no training or experience which would qualify her for any specialized employment. She had two 13-year-old daughters at home in her custody, for whom the court granted her a child support award of $500 each per month. She estimated her total average monthly expenses at $3,539 (including a mortgage payment on the house at $768 per month). She divided these expenses among herself and the two children as $1,346 per month for herself and $2,193 per month for the children. Husband, on the other hand, was making $85,000 per year. He estimated his total monthly expenses at $1,540, and

his monthly take-home pay was $3,586.92. The maintenance should be increased from $500 per month to $1,000 per month. Mrs. Clark would still have to supplement that income from personal earnings, and Mr. Clark's fears were unfounded that he would have to continue to support her in idleness and luxury.

The increased maintenance will be effective from the date of the decree to Mr. Clark's death. *In re Marriage of Morris,* 588 S.W.2d 39, 46 (Mo.App.1979); *Phillips v. Phillips,* 233 S.W.2d 775, 776 (Mo.App.1950).

## VI

Husband's appeal is based upon two points. First is the court's inclusion in marital property of a retirement plan (not the one mentioned earlier, which was held not to be marital property, but a parallel plan to which husband had contributed and which had a present cash value of $89,000). He cites an earlier unpublished opinion of our Supreme Court in *Kuchta v. Kuchta,* supra, which was set aside by the final opinion we have cited. The point is disallowed.

## VII

The husband's second point complains of the maintenance award. He claims no maintenance should have been allowed. What we have said above, holding the maintenance award inadequate, disposes also of this point.

## VIII

One other point should be mentioned. The decree in this case left the parties as tenants in common in the residence, subject to the right of the wife to occupy the same with the children until July 1, 1986, or upon certain other contingencies before July 1, 1986. The property should then be sold and the net sale proceeds divided equally between husband and wife. The wife was to pay the monthly house payments, maintenance and insurance. While neither party objects to this, the parties and the trial court are referred to *In re Marriage of*

*Buthod,* 624 S.W.2d 119 (Mo.App.1981), where a similar decree was condemned. This court in that case directed a specific disposition of the residence. We will not undertake to give the trial court a detailed direction in this respect, since the death of Mr. Clark introduces uncertainties of which we are uninformed by the record before us. The trial court should have latitude to make such disposition as between Mrs. Clark and Mr. Clark's estate.

The decree of legal separation is affirmed but the remainder of the judgment is reversed and the cause is remanded for further proceedings (with respect only to the retirement plan, the maintenance and the residence) in accordance with this opinion.

WASSERSTROM and PRITCHARD, JJ., concur.

DIXON, J., concurs in separate opinion.

SOMERVILLE, C.J., dissents in separate opinion.

SHANGLER and MANFORD, JJ., concur in dissenting opinion of SOMERVILLE, C.J.

DIXON, Judge, concurring.

I concur in the majority opinion. I write only to make explicit what is implicit in Judge Kennedy's opinion. The record in this case demonstrates that there was a will of the husband, admitted to probate, which leaves all of his property to his wife. The husband will have some property set off to his estate in the final order disposing of the marital property. The issue as to the status of the wife as a claimant to the husband's separate property under the will or by intestate succession is properly not reached or decided in this appeal. I do not wish my concurrence in the affirmance of the decree of legal separation to imply any view with respect to those issues. ·

SOMERVILLE, Judge, dissenting.

I respectfully dissent. My principal concern is with the confusion which is sure to arise in the wake of the majority opinion.

In arriving at its decision the majority opinion rejected application of the doctrine of abatement. Instead, it chose to affirm the decree of legal separation and division of marital property (with exceptions noted). The net effect of doing so constitutes a final adjudication that the marriage was irretrievably broken prior to the husband's death and confirms the wife's share of the marital property. At the same time it leaves the status of the spouses as husband and wife intact as of the date of the husband's death. Absent going further, the majority opinion preserves all marital rights of the wife in the deceased husband's estate (including his divisional share of marital property).

The impact of the majority opinion is haunted with the specter of unjust enrichment and gross inequity, for which neither application of the doctrine of abatement nor the result reached by the majority opinion constitutes an antidote. For example, if the doctrine of abatement is applied and the marital property was exclusively held as tenants by the entirety, a surviving spouse succeeds to the entire marital estate notwithstanding the fact the marriage was irretrievably broken. On the other hand, under the disposition made by the majority opinion a surviving spouse is unjustly enriched by simultaneous retention of his or her divisional share of marital property and preservation of his or her marital rights in a deceased spouse's estate. The patent examples mentioned barely scratch the surface of corresponding injustices and inequities that may be envisioned, virtually ad infinitum, if the law irrevocably commits itself to either the doctrine of abatement or the result pronounced by the majority opinion.

As prescribed in § 452.305, RSMo 1978, grounds for legal separation and grounds for dissolution of marriage are identical, "there remains no reasonable likelihood that the marriage can be preserved and therefore the marriage is irretrievably broken". Section 452.330, RSMo 1978 (Supp. 1982), mandates setting apart to each spouse his or her separate property and the division of marital property in both legal separation and dissolution of marriage.

Although separate maintenance is still recognized in this state, § 452.130, RSMo 1978, it is legally distinguishable from legal separation. Separate maintenance provides only for support of a wife and children, whereas, legal separation fixes custody of children, maintenance and support for wife and children, and mandates setting apart to each spouse his or her separate property and a division of marital property. Sections 452.330, 452.335 and 452.340, RSMo 1978. There is no escape from the fact that the ramifications of legal separation are vastly more far reaching than separate maintenance, as property rights of the respective spouses are adjudicated in legal separation.

Cases holding that a decree of separate maintenance does not destroy a wife's marital rights in a deceased husband's estate, *Bingham v. Bingham,* 325 Mo. 596, 29 S.W.2d 99, 102 (1930), and *Knese v. Knese,* 217 S.W.2d 394, 400 (Mo.App.1949), obviously rest upon the premise that property rights of the respective spouses were never adjudicated. As previously demonstrated, the same is not true with respect to legal separation where the property rights of the respective spouses have been adjudicated.

Cognizance is taken that § 452.360(3), RSMo 1978, provides that on motion of either party no earlier than ninety days after entry of a decree of legal separation, the court may convert a decree of legal separation into a decree of dissolution of marriage. As judicially construed, discretion possessed by trial courts under § 452.360(3), RSMo 1978, is tightly circumscribed and conversion, save for "rare cases" (the opinion by footnote implies the possibility of religious grounds for opposing conversion), should not be denied where there is no evidence that reconciliation is possible. *Howard v. Howard,* 583 S.W.2d 553, 556 (Mo.App.1979). It is clear that preservation of marital rights in a deceased spouse's estate is not a consideration as property rights of the respective spouses have already been adjudicated in the decree of legal separation.

The parties to this litigation, as well as the public, bench and bar, are entitled to

definitive guidance on the rampant problems inescapably flowing from the death of one spouse after a decree of legal separation has become final absent appeal, or where death occurs pending an appeal from a decree of legal separation which is subsequently affirmed. It is difficult to perceive how one can conscientiously subscribe to the belief that property rights in the aftermath, both in this case and future cases, should be decided on an ad hoc basis by balancing variant equities or inequities peculiar to each. The role of the lawyer in advising clients is made even more difficult when such uncertainty is perpetuated.

The parties to this litigation, as well as the public, bench and bar, would all be better served by going a step further in this case and holding that when one spouse dies after a decree of legal separation has become final absent an appeal, and before conversion, or where death occurs pending an appeal from a decree of legal separation which is subsequently affirmed, death, by operation of law, converts the decree of legal separation into a decree of dissolution with all of its attendant legal ramifications. Without meaning to be flippant or callous, death has no equal for irretrievably breaking a marriage and precluding reconciliation.

SHANGLER and MANFORD, JJ., concur.