Anna Jane FISCHER, Plaintiff-Respondent,

v.

William A. SEIBEL, Personal Representative of Alvin Thomas Fischer, Deceased, Defendant-Appellant.

No. WD 37036.

Missouri Court of Appeals, Western District.

June 30, 1987.

---

William A. Seibel, Jefferson City, for defendant-appellant.

James W. Gallaher, Jefferson City, for plaintiff-respondent.

Before DIXON, P.J., and MANFORD and NUGENT, JJ.

NUGENT, Judge.

William A. Seibel, the personal representative of the deceased defendant Alvin Thomas Fischer, appeals from a 1985 judgment dividing the marital property of Anna Jane and Alvin Thomas Fischer, the parties to a divorce suit filed in 1971.

All of the facts necessary to a decision in this case may be stated as follows: Anna Fischer filed a petition for divorce in 1971. In February, 1972, the court ordered Mr. Fischer to pay her $225 per month for temporary support, and he paid that amount until at least June 1, 1974. The parties agreed that their marriage was irretrievably broken.

In 1974 the court entered a decree dissolving the Fischer marriage but continued the case for later consideration of the division of property and maintenance. Neither party moved for a new trial or appealed. In August and September, 1974, Mrs. Fischer caused execution to issue to enforce the award of temporary alimony. The defendant filed a motion to quash execution, but the court never ruled on the motion. In December, 1980, the court entered an order dividing the property, giving to Mrs. Fischer $16,975 representing Mr. Fischer's half share of the marital property to offset unpaid maintenance, which then totaled $17,325. But in 1981 the court sustained defendant's motion for a new trial which questioned the division of marital property and the obligation of defendant to pay temporary support after May 31, 1974. In 1982, before a new trial could be held, the defendant died. In 1985, defendant's personal representative was substituted, a trial was held, and the court entered judgment dividing the marital property and holding that the allowance for temporary support continued in effect until defendant's death in 1982.[1]

---

1. The case passed through the hands of four judges before Judge Seier was temporarily transferred to preside at the new trial.

In his first point on appeal, the defendant argues that Mr. Fischer's obligation to pay temporary alimony or maintenance ended on May 31, 1974, when the marriage was dissolved.

In his second point, the defendant claims that upon the dissolution of the marriage on May 31, 1974, the parties became tenants in common in property previously held by the entirety. Therefore, he argues, the plaintiff owed the defendant husband a reasonable sum for the use of his one-half interest in the marital residence for the eighty-four month period during which she occupied the house or rented it to a third party. He contends that the court should have considered his share of the fair rental value when it offset his total liability of $18,900 plus interest for unpaid temporary support with his $19,000 interest in the marital property.

Before addressing defendant's points on appeal, we must decide whether the defendant husband's death caused the action to abate, ousting the court of any jurisdiction to divide and distribute the parties' property. We must also decide whether the partial decree of May 31, 1974, dissolving the marriage was extinguished for want of finality.

## I.

The question of the court's jurisdiction to divide the property after Mr. Fischer's death requires that we determine whether the principle of abatement applies in the instant circumstances under the Dissolution of Marriage Act (§§ 452.300—452.415), which became effective January 1, 1974.[2]

Before the enactment of the new dissolution law, the rule in Missouri was that upon the death of a party to a dissolution action before final judgment the action abated and the court lost jurisdiction. *Hogsett v. Hogsett*, 409 S.W.2d 232 (Mo.App.1966). In that case, where the wife was killed pending trial, Judge Blair wrote for this court (at 238) that the "broad rule" is

that the death of one of the parties to a divorce suit results in the immediate abatement and final termination of that suit and ousts the court of all jurisdiction of the person of the parties and of all the subject matter of the suit and of all right to make any further order in the suit. To put it otherwise, ... the abatement and final termination of the divorce suit which results as a consequence of the death of one of the spouses entirely destroys the divorce suit and leaves no divorce suit in which the court can make any order at all.

*See also, Heil v. Rogers,* 329 S.W.2d 388, 390 (Mo.App.1959).

In this case, however, the court entered a partial decree on May 31, 1974, finding the Fischer marriage to be irretrievably broken and dissolving the marriage. The court continued the case for later consideration of the division of property and maintenance, and those questions were never finally adjudicated before Mr. Fischer died. Did the remainder of the action pertaining to distribution of property and maintenance abate upon Mr. Fischer's death? Did the 1974 decree dissolving the marriage also abate for lack of finality because the court had not exhausted its jurisdiction before defendant died? The answers depend upon an analysis, construction and application of § 452.305.1, § 452.330.1 and § 452.360.1.

Section 452.305.1 provides that the court shall enter a decree of dissolution of marriage (1) if it finds the factual basis for its jurisdiction, (2) if it finds that the marriage is irretrievably broken, and (3) if it has considered, approved and made provision for (among other things) the maintenance of either spouse and the disposition of property. Section 452.330.1 further commands that "the court shall set aside to each spouse his property and shall divide the marital property in such proportions as the court deems just after considering all the relevant factors...."

This analysis of finality must also take into account § 452.360.1, which provides as follows:

A decree of dissolution of marriage or of legal separation is final when entered, subject to the right of appeal. An appeal

2. All sectional references are to Revised Statutes of Missouri, 1978.

from a decree of dissolution that does not challenge the finding that the marriage is irretrievably broken does not delay the finality of that provision of the decree which dissolves the marriage beyond the time for appealing from that provision, so that either of the parties may remarry pending appeal.

Here, neither party appealed the order dissolving the marriage, nor could they. In her answer to defendant's cross-petition for dissolution of marriage, Mrs. Fischer admitted that the marriage was irretrievably broken. Therefore, within the meaning of § 512.010, which governs the right of appeal, neither qualifies as a party "aggrieved" by the partial decree dissolving the admittedly irretrievably broken marriage. *See also Crigler v. Frame,* 632 S.W.2d 94 (Mo.App.1982).

In *State ex rel. Horridge v. Pratt,* 563 S.W.2d 168, 170 (Mo.App.1978), we recognized that in enacting § 452.360.1, the legislature intended that, if not appealed, the part of the decree dissolving the marriage would become final by operation of law. In an attempt to reconcile the language of § 452.360.1 with cases holding that neither party may appeal a decree when no division or an imperfect division of marital property has been made,[3] Judge Dixon wrote that such holdings do not and could not affect finality of the unappealed decree of dissolution.

*Fields v. Fields,* 584 S.W.2d 163 (Mo.App.1979), provides a good illustration of the concept of separable finality of the issues in a dissolution proceeding. There, the appellate court held that it had no jurisdiction to decide questions regarding the property division in the absence of a final order distributing all of the marital property. However, the court affirmed the judgment of the circuit court insofar as it concerned the dissolution of the marriage. *Id.* at 167. *In re Marriage of Jamison,* 592 S.W.2d 181, 183 (Mo.App.1979). *See also In re Marriage of Dusing,* 654 S.W.2d 938, 944 (Mo.App.1983).

■ While abatement remains the rule before final judgment, the concept of separable finality of the order dissolving the marriage under the new dissolution law makes abatement inapplicable here. In view of the admitted irretrievable break up of the marriage, the Fischer marriage was dissolved on May 31, 1974, as contemplated by the terms of § 452.360.1. The clear purpose of that section is to free the parties to remarry where they do not question the dissolution of the marriage.[4]

■ Having determined that the unappealed partial decree was final and, therefore, not subject to abatement due to Mr. Fischer's death, we next ask whether his death caused abatement of the remainder of the case, that is, the then undecided issues of maintenance and property division. The trial court's final decree regarding those matters was not rendered until 1985, after Mr. Fischer's death in 1982.

On the basis of *Cregan v. Clark,* 658 S.W.2d 924 (Mo.App.1983) (en banc), and in keeping with the philosophy of the Dissolution of Marriage Act, we decline to apply the principle of abatement to the present situation. We held in *Cregan* (at 927) that "when property rights of the parties are involved, the parties are entitled to have that aspect of the case decided though one of the parties has died." *See also Anderson v. Dyer,* 456 S.W.2d 808, 814 (Mo.App.1970).

In *Cregan,* the husband died pending an appeal challenging the legal separation por-

---

**3.** *See, e.g., Walker v. Walker,* 553 S.W.2d 520 (Mo.App.1977); *Corder v. Corder,* 546 S.W.2d 798 (Mo.App.1977); *Pendleton v. Pendleton,* 532 S.W.2d 905 (Mo.App.1976). *See also Frame v. Frame,* 696 S.W.2d 332 (Mo.App.1985); *Anspach v. Anspach,* 557 S.W.2d 3 (Mo.App.1977).

**4.** In the present case, the defendant did, in fact, remarry in 1975. Were we to say that the 1974 partial decree dissolving the marriage had no finality until the court had exhausted its jurisdiction in 1985 and, therefore, abated upon Mr. Fischer's death in 1982, we would be required to hold that the Fischer marriage was never dissolved. In that event, the defendant's second marriage would have been a nullity, the plaintiff would have been considered the defendant's widow and would have taken title by survivorship to all property they held as joint tenants or by the entirety. The second Mrs. Fischer would have no marital rights in the deceased's estate.

tion of the decree as well as the property and support provisions. Compelled by the need to determine the property rights of the parties, the court held that the appeal had not abated and proceeded to affirm the decree of legal separation and to reverse and remand to the trial court the issues of distribution of the husband's retirement benefits and the disposition of the marital home. We also ordered that the maintenance award be increased by $500 per month from the date of the decree to the date of the husband's death. The concerns that led the late Judge Somerville to dissent in *Cregan* are not present in the instant case. He believed that by rejecting the doctrine of abatement the court accorded the wife not only her share of marital property under the decree of legal separation but also preserved her marital rights in the deceased husband's estate, including his divisional share of marital property, in spite of the fact that the marriage was irretrievably broken. *Id.* at 930.

The case at bar, an action for dissolution of marriage, simply does not present the potential for unjust enrichment and inequity inherent in an action for legal separation that worried Judge Somerville. Moreover, the disposition of the instant case does not require that we identify the estate of each spouse in property at any given moment. Instead, we are called upon to further the goals of the Dissolution of Marriage Act, and the estate of the parties in that property is irrelevant because the court's duty to distribute the property does not depend on how the property is titled.

One of the primary purposes of the Dissolution of Marriage Act is to determine the rights of the parties with respect to all property brought into or acquired during the marriage. *See Anspach v. Anspach,* 557 S.W.2d 3, 5–6 (Mo.App.1977). Section 452.330, one of the most innovative features of the Act, gives the court broad powers to distribute the marital property "as the court deems just." The spirit of this legislation is to foster the parties' independence by placing each of the former spouses in the most self-sufficient status possible. *Fausett v. Fausett,* 661 S.W.2d

614, 618 (Mo.App.1983); *Corder v. Corder,* 546 S.W.2d 798, 805 (Mo.App.1977).

Since the Dissolution of Marriage Act is the latest enactment governing the distribution of property, its directives override earlier court decisions and legislative enactments to the contrary. Under the instant circumstances, application of the doctrine of abatement is at war with the purposes and mandate of the Act. According to the usual practice, a trial court enters its order dividing the property and makes the appropriate provisions for custody, support and maintenance at the time it dissolves the marriage. § 452.305. Here, for reasons not all apparent in the record, more than a decade separates the decree dissolving the marriage and the final orders pertaining to property and maintenance entered after the new trial in 1985. The anomaly presented by this case underscores the need to apply the rule of *Cregan* to reach the goals of the Dissolution of Marriage Act.

## II.

On appeal, the husband's personal representative claims in his first point that the trial court erred in continuing the temporary maintenance award beyond the date of the partial decree dissolving the marriage to the date of Mr. Fischer's death.

We apply the standard of review for court-tried cases of an equitable nature declared in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.1976) (en banc).

The defendant's reliance upon cases decided before the enactment of the Dissolution of Marriage Act in support of his first point is misplaced. Those cases hold that the final decree of divorce vacates the order for payment of temporary alimony. *See, e.g., Williams v. Williams,* 349 S.W.2d 422, 424 (Mo.App.1961); *Richardson v. Richardson,* 288 S.W.2d 20, 22–24 (Mo. App.1956); *Woods v. Woods,* 236 Mo.App. 855, 159 S.W.2d 320, 323 (1942). The key concept is that of finality. The Act has changed the meaning of finality by introducing the concept of separable finality. The defendant's contention that Mr. Fischer's obligation to pay temporary maintenance ended on May 31, 1974, fails to take

into consideration the Act's concept of the finality of the decree dissolving the marriage separate from the other issues in a dissolution action. *In re Marriage of Jamison*, 592 S.W.2d at 183; *Fields v. Fields*, 584 S.W.2d at 166–67.

According to *Tzinberg v. Tzinberg*, 631 S.W.2d 681, 683 (Mo.App.1982), "[t]emporary awards are just that—temporary—intended to maintain the status quo pending final judgment." In that case, the husband challenged the award of temporary maintenance because the wife was capable of working to earn some of the income necessary to meet her needs. The appellate court held that the trial court did not abuse its discretion in refusing to require the wife to give up her educational pursuits and seek employment "prior to full and final determination of the status of the marriage and the wife's needs."

In effect, the *Tzinberg* court said that temporary maintenance serves to maintain the status quo until final orders concerning the recipient's needs are entered after a full evidentiary hearing. The just division of property required by § 452.330 and the factors to be evaluated in determining the appropriateness of maintenance under § 452.335 are two issues to be considered in depth at such a hearing.

■ In the present case, the wife's needs could not have been fully assessed until the court finally determined how the property should be distributed. *See* § 452.335.1. After making a determination regarding distribution in its 1980 judgment, the court granted the defendant a new trial. Instead of becoming final, therefore, the 1980 judgment was set aside, and the case was reinstated for trial on the merits. Had the 1980 judgment become final, the wife's

right to temporary alimony would thereupon have terminated, but the effect of the grant of the new trial was not only to set aside that interlocutory order, it also reinstated her right to temporary alimony without further action on her part. That left the husband obligated to continue to obey the order to pay temporary support just as though the court had not rendered the judgment that it later set aside in granting a new trial. *See Smith v. Smith*, 176 S.W.2d 647, 648–49 (Mo.App.1944).[5]

■ The trial court never vacated or modified the 1972 order for temporary support, and after May 31, 1974, the defendant paid no temporary maintenance. Mrs. Fischer was left to meet her own needs despite a disability that left her unable to work after 1969. Her efforts to enforce continued payment of the temporary allowance belie any waiver by her of her claim for the temporary award. The record shows that in August and September, 1974, she caused execution to issue to enforce the award and that the court never ruled defendant's motion to quash the execution. Mr. Fischer's failure to bring the matter to the court's attention and to seek definitive relief during the next six and one-half years constitutes a failure to prosecute his motion to quash execution. He has no right now to complain of the court's failure to rule his motion absent some showing of diligence on his part. He made no such showing.

The trial court correctly held that Mr. Fischer was in arrears on his obligation to pay temporary maintenance from June, 1974, to the date of his death, February 4, 1982.

5. *Smith*, a separate maintenance case, holds that "an order for the wife's temporary support ... remains in effect until ... a final determination of the principal case on the merits. Such, indeed, is the very purpose of the order, which contemplates that the husband shall be compelled to provide his wife with the means to prosecute her suit to a final conclusion, at which time the question of her permanent maintenance will be necessarily adjudicated." The *Smith* court went on to say that the trial judge has "handed down a decision in defendant husband's favor, but that did not mean that the case was thereupon finally determined so as to have nullified the order for the payment of temporary alimony and suit money pending the suit for separate maintenance. On the contrary, the judgment which was entered, though no doubt final in form, was in reality but interlocutory in its application; and since the motion for new trial was filed, could not have become final until the motion was overruled." 176 S.W.2d at 648–49.

In his second point, the husband's personal representative asserts that the trial court erred in failing to consider the fair rental value the plaintiff allegedly owed to him for her use of his interest in the marital property when it offset his liability for unpaid temporary support by awarding plaintiff his share of the marital property.

■ In the exercise of its equitable jurisdiction, the court found that the wife was entitled to the husband's one-half interest in the marital property as an offset against the husband's obligation for unpaid temporary support. The defendant claims that this order fails to credit him with the fair rental value of his interest in the marital residence for the eighty-four months that Mrs. Fischer had sole possession of the property.[6]

The trial court made no findings regarding any obligation on Mrs. Fischer's part to account to the defendant for one-half the fair rental value of the marital property. The record reflects scant evidence of what that amount might be. The court did, however, make countervailing findings that Mrs. Fischer had paid for the maintenance, repair, upkeep, and mortgage payments on the property in the sum of $14,957 from 1971 to 1981. She also paid a total of $776.73 in real estate taxes and a total of $560 for fire and other insurance coverage for the house.

We cannot say that the trial court misused its inherent power to compel the set-off presented here, where the facts so strongly demand that equity intercede. *See Watson v. Harris*, 435 S.W.2d 667, 676 (Mo.1968).

Accordingly, we affirm the judgment of the trial court.

DIXON, J., concurs.

MANFORD, J., dissents by way of separate opinion.

MANFORD, Judge, dissenting.

I must dissent.

Since this case has been under submission for a great length of time, I will not further its delay by any long account of the facts or any profound legal thesis designed to support a preconceived desired result as has been followed in the majority opinion.

The majority opinion follows the rule announced by this court in *Cregan v. Clark*, 658 S.W.2d 924 (Mo.App.1983). I submit that the rule in *Cregan* is wrong for and upon the reasons set forth in the dissent in *Cregan* by the late Hon. Ronald Somerville. The rule in *Cregan* should be renounced.

It should be declared that abatement did occur, and the varied interests of the parties should be adjudged according to that principle of law. What has happened herein, as it did in *Cregan*, is that this court has continued an estate by the entireties past the date of the contract of marriage. The marriage is the very basis upon which such property estate exists. Since the majority herein, as it did in *Cregan*, chooses to ignore the time-honored status of estates in property, I am not certain if anyone knows or will know the property status of parties to dissolution proceedings in the future.

On another note, the majority opinion does not address the problem presented by the trial court's failure to rule appellant's motion to quash the enforcement of the temporary maintenance award. If that had been sustained, how could have the result described in the majority opinion regarding temporary maintenance ever been supported?

As to the matter of the temporary maintenance, the majority opinion relies upon the case of *Smith v. Smith*, 176 S.W.2d 647 (Mo.App.1944), for the profound statement,

---

**6.** The defendant apparently failed to raise the issue by his pleadings or by testimony at trial. The parties submitted a brief agreed statement of the record instead of the trial transcript, presenting very little for this court to review. The only evidence of the rental value reflected in that statement of the record dates from 1983 forward, when Mrs. Fischer moved out and rented the premises to a third party for $300 per month.

Following the 1985 judgment, the defendant again raised his claim for rent in his motions to reopen the property settlement portion of the decree and for new trial. The court denied both motions.

"an order for the wife's temporary support ... remains in effect until ... a final determination of the principal case on the merits." The only problem with reliance upon *Smith* is that *Smith* presents just the opposite result that the majority seeks herein. In *Smith*, the wife was given temporary allowances. The trial court found against the wife on the issue of separate maintenance. She filed a motion for new trial and that was sustained. The *Smith* court stated, and correctly so, "It is well established in the practice that where a motion for a new trial is sustained, the case stands for trial de novo as though there had never been a trial; and it thereupon becomes the duty of the court to proceed as in the first instance with no advantage to be taken of the former decision on the one side, or the action of the court in granting the new trial on the other." (citations omitted)

Thus, the rule in *Smith, supra,* as applied herein, would have nullified the temporary allowances to respondent because the trial court had granted to appellant a new trial on that issue.

The judgment herein should be reversed and the cause remanded for further proceedings.