**Mary Ruth McMILIAN, Appellant,**

v.

**James Henry McMILIAN, Respondent.**

**No. WD 66732.**

Missouri Court of Appeals,
Western District.

Feb. 27, 2007.

Catherine Earnshaw–Hobbs, Lees Summit, MO, for appellant.

Kenneth M. Hayden, Versailles, MO, for respondent.

Before THOMAS H. NEWTON, Presiding Judge, PATRICIA BRECKENRIDGE, Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

Mary McMilian ("Wife") appeals the trial court's entry of a judgment dissolving her marriage to James McMilian ("Husband").[1] Specifically, Wife argues that the trial court erred in entering its formal judgment because the case was abated by Husband's death, and the court thereby lost jurisdiction. Wife also argues that the trial court erroneously entered a *nunc pro tunc* order because there was no prior judgment or order entered that could have been corrected. For the following reasons, we reverse.

The parties married on August 1, 1993, and separated on June 16, 2005. There were no children born of the marriage. Wife subsequently filed a petition for dissolution of marriage, and Husband filed a counter-petition. The matter was tried on February 10, 2006, but the court did not issue a ruling at that time. Between February 10 and February 15, 2006, the court communicated with the parties' attorneys via fax and e-mail on at least two occasions. Husband died on February 15, 2006, after the conclusion of the trial but before the court issued its formal written judgment. On March 1, 2006, Wife filed a Motion to Abate the action due to Husband's death. The trial court did not rule on the motion but instead entered a "Judgment Entry and Order Nunc Pro Tunc" on March 20, 2006. This appeal follows.

"On review of a civil court-tried case, we will sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Clark v. Clevenger,* 978 S.W.2d 511, 513 (Mo.App. W.D.1998).

Wife brings two points on appeal. In her first point, Wife argues that the trial court erred in entering its formal judgment because the case was abated by Husband's death, and the court thereby lost jurisdiction. Wife argues in her second point that the trial court erroneously entered a *nunc pro tunc* order because there was no prior judgment or order entered that could have been corrected. Since the two issues are inextricably intertwined, we will address them together.

As is discussed in detail below, although jurisdiction in a dissolution matter generally abates upon the death of either spouse, it does not abate if the court has ordered the marriage dissolved prior to the spouse's death, even if there are other issues remaining to be resolved. *Linzenni v. Hoffman,* 937 S.W.2d 723, 726 (Mo. banc 1997). Where a *nunc pro tunc* judgment is otherwise proper, it may serve to reverse any prior abatement. *In re Marriage of McIntosh,* 126 S.W.3d 407, 412–13 (Mo.App. S.D.2004) (citing *Clark v. Miss. Valley Trust Co.,* 357 Mo. 785, 211 S.W.2d 10 (1948); *Pirtle v. Cook,* 956 S.W.2d 235 (Mo. banc 1997); and *Linzenni,* 937 S.W.2d 723.) A *nunc pro tunc* order is proper only if there is sufficient evidence to show that the court actually rendered an order, but that order was not reflected in prior written rulings due solely to clerical error. *Pirtle,* 956 S.W.2d at 243.

The *nunc pro tunc* portion of the judgment issued in the case *sub judice* relates only to the finding that the marriage had

1. Husband's estate acts as Respondent in this matter.

been dissolved. Thus, both of Wife's points of error turn on whether there is sufficient evidence on the record to show that the trial court had actually dissolved the marriage prior to Husband's death.

■ "The essential bases of a court's authority to adjudicate a controversy are its jurisdiction over the subject matter of the controversy and jurisdiction over the parties.... [I]n certain narrow circumstances a party may question the authority, or jurisdictional competence, of a court to render the particular judgment in the particular case." *In re Marriage of Hendrix,* 183 S.W.3d 582, 587–88 (Mo. banc 2006) (internal quotation omitted).

> Generally, jurisdiction abates in a dissolution of marriage action where one of the parties dies while the case is pending. However, under the policy of our dissolution of marriage act, the doctrine of abatement is inapplicable where a dissolution of marriage has been ordered prior to the death of a party, even though the order may be partial, interlocutory or not a final judgment resolving all issues in the case.

*Linzenni,* 937 S.W.2d at 726.

Wife argues that a "judgment," for purposes of Rule 74.01(a), is a writing, signed by a judge, denominated "judgment" or "decree," that is filed. She asserts that there was no writing complying with those requirements prior to Husband's death, and therefore, the case was abated.

■ Numerous cases have addressed the effect of Rule 74.01(a)'s requirements

for a valid "judgment" as they relate to whether a ruling is final for the purposes of appeal, thereby determining whether the appellate court has jurisdiction.[2] However, the issue of abatement or survival of an action after the death of one of the parties is *not* a procedural question regarding finality of a judgment for purposes of appeal. *Linzenni,* 937 S.W.2d at 726. Rather, it is a question of substantive law that was not modified by any amendment to the procedural rules.[3] *Id.* "The procedural rules and cases construing those rules are not dispositive of questions of substantive law." *Id. Linzenni* makes it clear that a dissolution action does not abate upon the death of one spouse as long as there is clear evidence that the court *dissolved the marriage* prior to the death, even if there are still other issues to be resolved. *Id.; see also McIntosh,* 126 S.W.3d at 416. Whether a valid "judgment" under Rule 74.01(a) had been issued prior to Husband's death is irrelevant for the purpose of determining whether the action abates. *Linzenni,* 937 S.W.2d at 726.

In *Fischer v. Seibel,* 733 S.W.2d 469 (Mo.App. W.D.1987), this Court held that a dissolution action did not abate where the trial court entered a partial decree finding the marriage to be irretrievably broken and dissolving the marriage prior to the husband's death, even though the issues of division of property and maintenance were not adjudicated prior to the death. *Id.* at 471–72. We found that the marriage was finally dissolved as of the date of the

---

**2.** *See, e.g., Nandan v. Drummond,* 5 S.W.3d 552, 557–58 (Mo.App. W.D.1999); *In re Prough,* 8 S.W.3d 186, 187 (Mo.App. W.D. 1999); *In re Marriage of Berger,* 931 S.W.2d 216, 216–17 (Mo.App. S.D.1996).

**3.** The 1995 amendments to Rule 74.01(a) clarified the ambiguity as to when there was a final judgment for purposes of appeal by "im-

posing an express requirement that the document or docket notation be 'denominated "judgment".' " *City of St. Louis v. Hughes,* 950 S.W.2d 850, 853 (Mo. banc 1997). "Rule 74.01(a) does not expand or shrink jurisdiction, the right to appeal, or any other substantive right. It merely clarifies what constitutes a 'judgment.' " *Id.*

court's partial decree finding the marriage irretrievably broken, which the parties did not dispute, and dissolving the marriage. *Id.* at 472. We reasoned that "[w]hile abatement remains the rule before final judgment, the concept of separable finality of the order dissolving the marriage under the [Dissolution of Marriage Act] makes abatement inapplicable here." *Id.* Unlike in *Fischer*, there was no written partial decree in this case, so the concept of separable finality is inapplicable. We must, therefore, look to cases where something less than a formal decree was filed by the trial court prior to death.

In *Linzenni*, the Court found that a worksheet filed by the court prior to the death of one of the spouses was sufficient to dissolve the marriage, thereby preventing abatement of the action, where the worksheet unequivocally stated that the marriage was "ORDERED DISSOLVED" and was signed by the judge. 937 S.W.2d at 726 (citing *Rule 74.03*).[4] The worksheet contained typewritten and handwritten information regarding the proceedings in the case. *Id.* at 724. Although the Court also reviewed a letter sent to counsel and a docket entry, both of which were dated prior to the party's death, *Id.* at 724–25, the Court did not make a ruling on whether these were sufficient in themselves to dissolve the marriage, instead relying solely on the worksheet filed by the trial court. *Id.* at 726. However, the

Court did point out that both the letter and the docket entry also expressly dissolved the marriage.[5] *Id.* at 725.

This case is distinguishable from *Linzenni* in several respects. The legal file contains copies of a Domestic Relations Proceedings Information Form and a Family Court Activity Log, which are comparable in form to the worksheet and the docket entry reviewed by the *Linzenni* court. The Information Form contains boxes to be checked regarding jurisdictional and other requirements for a dissolution matter, with a space at the end for the judge's signature. This Form is not filled in, other than the typewritten names of the parties, attorneys, and case number, and it is not signed by the judge. The Activity Log has dated, handwritten entries regarding proceedings in the case, but it has nothing after October 27, 2005, long before the case was tried. It is clear that neither of these documents dissolves the marriage.

■ Husband has also provided, in the appendix to his brief, copies of an e-mail and a fax purportedly sent by the court to counsel after the trial but before Husband's death. "The mere inclusion of documents in an appendix to a brief does not make it part of the record on appeal," and this Court generally "will not consider documents that are not included in the record." *State ex rel. Miss. Lime Co. v. Mo. Air Conservation Comm'n*, 159 S.W.3d

---

4. We note that Rule 74.03 does not appear to apply to this ruling, as it only describes the requirements for notice of the entry of an order or judgment.

5. The letter stated,

We request [attorney for husband] provide a proposed formal decree of dissolution of marriage to more completely set forth the determination made in the case. We recommend this decree describe specifically the marital property being set aside to each party. To avoid misunderstanding, the court's intention is that Judgment in the

case is made this date, although the formal Decree will be executed in the future.

*Id.* at 724. The Court noted that the letter was also signed by the judge and that "[t]he letter orders the marriage dissolved." *Id.* at 724–25. The Court also noted that the docket entry on the date of the trial included "words almost identical to the judge's signed work sheet," again expressly stating that the marriage was "ORDERED DISSOLVED" and that a formal order would be filed by the petitioner's counsel. *Id.* at 725.

376, 380 n. 2 (Mo.App. W.D.2004). Nevertheless, since these documents form the only basis for Husband's argument, we will gratuitously provide a cursory review. The documents in question consist of a copy of the "Summary of Marital and Non–Marital Property and Liabilities" supposedly faxed by the trial judge to counsel on February 13, 2006, and an e-mail from the judge to both attorneys on February 10, 2006. The e-mail states in its entirety:

> I have no idea who won. I am awarding $300 indefinite maintenance. This in essence is the high dollar of what she said she would have received extra if she had kept working. I am dividing the property as set forth on the form I am faxing to each of you later today. Catherine [Earnshaw–Hobbs, Attorney for Wife], since you are receiving the maintenance, please prepare the judgment, mail it to Ken [Hayden, Attorney for Husband] for his approval as to form and content and mail to me for my review and signature at: Roger Prokes 305 N Main Suite 204 Maryville, MO 64468

Husband argues that these communications are sufficient to show that the court had dissolved the marriage and resolved all issues prior to Husband's death because "the trial court's writings evidenced [its] inherent ruling dissolving the marriage." Husband relies on *In re Marriage of McIntosh,* 126 S.W.3d 407 (Mo.App. S.D. 2004), as support for his contention.

In *McIntosh,* the court announced at the conclusion of the trial that "[t]he marriage is dissolved" and completed a detailed docket entry indicating findings on the remaining requirements for a dissolution of marriage, although it failed to check the box "Judgment and Decree of Dissolution of Marriage ordered." 126 S.W.3d at 409. The court acknowledged that, in order for a *nunc pro tunc* order to be upheld, the order must be supported by a writing in the court's "record or papers" that shows the judgment was "actually rendered" and that "parol evidence will not support an order *nunc pro tunc.*" *Id.* at 413. Nonetheless, it found that "[the transcript] clearly records a judicial determination of the issue required by *Linzenni*—that the marriage was ordered dissolved. It is clear that this is what the trial court intended to do in completing the docket entry." *Id.* at 417. Given the combination of the court's definite oral statement dissolving the marriage and the completion of the docket entry regarding the other required findings for a dissolution, the appellate court held that the oral statement was sufficient to authorize the later *nunc pro tunc* judgment commemorating that finding. *Id.*

In the instant appeal, the trial court did not make *any* statements on the record dissolving the marriage, let alone any definite statements. Husband misinterprets *McIntosh* to hold that docket entries are sufficient to order the marriage dissolved even if they do not expressly state that the marriage is dissolved, as long as they resolve all remaining issues of property and maintenance. We need not address the issue of whether the fax and e-mail relied upon by Husband are properly considered "docket entries" that may be relied upon in determining a trial court's actions because, even if they were, they do not even purport to dissolve the marriage, much less expressly declare it dissolved. Contrary to Husband's reading, *McIntosh* is very clear that the only reason the docket entries were sufficient was because of the prior oral announcement on the record that "[t]he marriage is dissolved." *Id.* at 416–17. The court found that the trial court's announcement was "direct and . . . constituted the rendering of a decision or order in the case, in contrast to . . . an-

nouncements of what the court 'would' do or what a party was 'entitled' to." *Id.* at 416 (citations omitted).

Here, the trial court's pronouncements at the conclusion of trial were much less clear than the statement relied on in *McIntosh.* The court stated at the close of evidence:

> After I finish that soon as I get done with that docket I am going to come down and sit down with the laptop and I am going to crank this out and I will e-mail what the disposition will be. So it will be later part of the afternoon I suppose.

The parties then presented closing arguments, after which the court stated:

> Any authority you want to cite me I will look at. There wasn't anything that was argued here that was too striking from an overall point of view. I will try to have my thoughts out so one of [sic] the other can be preparing a judgment by the middle of the afternoon tomorrow. Have a good evening.

It is clear that the court did not intend to dissolve the marriage at that time. Although the e-mail and fax submitted by Husband appear to set forth the determination of the requirements for a dissolution of marriage as they relate to property division and maintenance, they do not state that the marriage was dissolved, nor do they set forth the necessary jurisdictional findings. Thus, the record does not show that the trial court dissolved the marriage prior to Husband's death.

■ Husband appears to argue that, even if the action abated at Husband's death, the trial court's order *nunc pro tunc* was sufficient to reverse the abatement. A *nunc pro tunc* judgment, if otherwise proper, serves to reverse any prior abatement of a dissolution petition. *McIntosh,* 126 S.W.3d at 413. Husband argues that "the [c]ourt's omission of a written

finding in the record dissolving the marriage is an oversight which may be corrected by an order *nunc pro tunc,*" citing *Pirtle v. Cook,* 956 S.W.2d 235 (Mo. banc 1997), and Rule 74.06(a) in support. "The party seeking to show that an order is an order nunc pro tunc must show that the original judgment entry did not accurately reflect the court's actual judgment and that the subsequent order merely caused the record to conform to the true judicial determination of the parties' rights." *Pirtle,* 956 S.W.2d at 243. Husband's reliance on *Pirtle* is also misplaced.

Rule 74.06(a) codifies the common law concept of *nunc pro tunc* judgments, stating that "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders." *McIntosh,* 126 S.W.3d at 411–12; *Rule 74.06(a).* In *Pirtle,* the Missouri Supreme Court summarized the long-held policies regarding *nunc pro tunc* orders.

> The court's power over its records . . . exists so that the court can cause its records to represent accurately what occurred previously. This power is one to enter nunc pro tunc (now for then) an accurate record entry of a judgment previously rendered. No question can exist as to the power of the [c]ourt to make *nunc pro tunc* entries, for the furtherance of justice, and thus to place on the records the action of the [c]ourt . . . on a former day of the term . . . which the clerk had omitted to enter at the time. . . . The power to issue nunc pro tunc orders, however, constitutes no more than the power to make the record conform to the judgment already rendered; it cannot change the judgment itself. It is universally held that the

only true function of a nunc pro tunc order is to correct some error or inadvertence in the recording of that which was *actually done*, but which, because of that error or omission was not properly recorded; and, that it may not be used to order that which was *not* actually done, or to change or modify the action which was taken.

956 S.W.2d at 240 (internal citations and quotations omitted).

 This is not a case in which the clerk neglected to enter an order; rather, the trial court did not make the required finding at all. "It is improper to use a nunc pro tunc order to correct judicial inadvertence, omission, oversight or error, or to show what the court might or should have done as distinguished from what it actually did, or to conform to what the court intended to do but did not do." *Javier v. Javier*, 955 S.W.2d 224, 225–26 (Mo. App. E.D.1997) (internal quotation omitted). "[T]he subsequent order must do nothing more than correct a clerical error," which "must be discernible from the record." *Pirtle*, 956 S.W.2d at 243. In order to support a *nunc pro tunc* order, the record must include a writing that shows the judgment was "actually rendered," and "parol evidence will not support an order *nunc pro tunc*." *McIntosh*, 126 S.W.3d at 413.

As discussed *supra*, there is insufficient evidence in the record to show that the trial court made the required finding that the marriage was dissolved prior to Husband's death. The only place where the court definitely dissolves the marriage is in the judgment issued after Husband's death. In fact, the trial court expressly states in the judgment that it neglected to

make the required finding that the marriage was dissolved prior to Husband's death. The court first sets forth the purported dates on which he made the findings regarding maintenance and property division.[6] The court then states, "WHEREUPON, this Court, having resolved all issues pending in this cause of action, finds that it omitted from the record, a finding that the marriage of the parties had been dissolved, and that, therefore, this omission shall be corrected with this order nunc pro tunc." Therefore, the entry of a *nunc pro tunc* order was inappropriate.

In conclusion, the case law is clear that there must be a clear and direct finding by the trial court that the marriage was dissolved prior to a spouse's death in order to avoid abatement. *See Fischer*, 733 S.W.2d at 472; *Linzenni*, 937 S.W.2d at 726; *McIntosh*, 126 S.W.3d at 416–17. In this case, there was no finding whatsoever that the marriage had been dissolved prior to Husband's death. Thus, the marriage was not properly dissolved before Husband's death, and the action abated on the date of death. Wife's points are both granted. Accordingly, the "Judgment Entry and Order Nunc Pro Tunc" entered by the trial court on March 20, 2006 "is utterly void." *Heil v. Rogers*, 329 S.W.2d 388, 393 (Mo. App. W.D.1959). The trial court's judgment is reversed and the cause is remanded with instructions to dismiss the case for lack of jurisdiction.

All concur.

---

6. The trial court states that the parties presented evidence and the case was taken under advisement on February 9, 2006, and that the court made findings regarding maintenance and directed counsel to prepare a judgement regarding property division on February 10, 2006.